UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 18-10364-DPW |
| 1)  JASIEL F. CORREIA, II, and 2)  GENOVEVA ANDRADE, | ) ) ) ) | |
| Defendants | ) | |

## ASSENTED-TO MOTION TO MODIFY AMENDED PROTECTIVE ORDER

The United States of America, by and through the undersigned Assistant United States Attorney, with the assent of counsel for both defendants, hereby moves to modify the amended protective order in this case, ECF Dkt. No. 102, to further allow the Massachusetts Cannabis Control Commission ("CCC") to share protected information in certain limited circumstances. More specifically, the government seeks a Second Amended Protective Order to allow the CCC to disclose protected information in connection with its own investigative and administrative proceedings, as well as in connection with state court proceedings.  As explained in more detail below, these additional modifications to the Amended Protective Order are necessary for the CCC to perform its legitimate regulatory duties, which include, but are not limited to, its investigation of applicants seeking to operate as adult-use Marijuana Establishments ("MEs"), or medical-use Medical Marijuana Treatment Centers ("MTCs") in the city of Fall River.[1]

In support of this motion, the government states as follows:

---

[1]      The CCC regulates the licensing of entities seeking to operate in the adult- and medical-use industries in Massachusetts.  *See* Mass. St. 2017, c. 55; G.L. c. 94G; G.L. c. 94I; 935 CMR 500.000 (adult-use operations); 935 CMR 501.000 (medical-use operations); 935 CMR 502.000 (co-located operations).

1. On December 11, 2018, on joint request by the parties, U.S. Magistrate Judge Cabell entered the first protective order in this case. ECF Dkt. No. 27. In pertinent part, that order stated that, "[t]he discovery materials and information contained therein shall be used solely for the purpose of litigating matters in this case and shall not be divulged to any other person."

2. On February 10, 2020, this Court issued the Amended Protective Order, which allowed the CCC to review protected information in the government's possession, so that the CCC could perform its legitimate regulatory duties. *See* ECF Dkt. No. 102. In relevant part, the Amended Protective Order stated: "The CCC understands that it is permitted to use the protected information in the performance of its legitimate regulatory duties. This includes the CCC making public disclosures that, in sum and substance, in its interactions with law enforcement officials, it has not identified any concerns regarding suitability for licensure. However, to the extent that the CCC believes explicit disclosure of the protected information is necessary, the CCC agrees to seek this Court's permission before disclosing such information."

3. Under G.L. c. 94G, § 4(a), the CCC is required to review and consider applications for licensure and to monitor licensees' compliance with licensure requirements. G.L. c. 94G, § 4(a)(ix)-(xii). To these ends, the CCC is authorized to investigate qualifications for licensure, including suitability. G.L. c. 94G, § 4(a)(v) (authorizing the CCC to "conduct investigations into the qualifications of . . . all applicants for licensure"); § 4(a)(xiv) (authorizing it to "gather facts and information applicable to the commission's obligation to issue, suspend or revoke licenses, registrations, finding of suitability or approval of licensure for: [A] a violation of this chapter or any regulation adopted by the commission; [B] willfully violating an order of the commission directed to a licensee or a person required to be registered; [C] the conviction of a criminal offense; or [D] any other offense which would disqualify such a licensee from holding a license").

4. Following the issuance of the Amended Protective Order, the CCC received from the government, and subsequently reviewed, interview reports of individuals seeking to operate as MEs or MTCs in Fall River. As a result of this review, the CCC identified the need for further investigation into potential suitability issues.

5. The CCC believes that a limited degree of explicit disclosure of certain protected information is now necessary in order for the CCC to perform its legitimate regulatory duties, which may include an informal hearing before its Suitability Review Committee, *see* 935 CMR 500.800 and 935 CMR 501.800; the consideration of a license application by the full Commission, *see* 935 CMR 500.103 and 935 CMR 501.103; an administrative hearing on the denial of a licensure application before a Hearing Officer, *see* 935 CMR 500.500 and 935 CMR 501.500; or responding to a civil complaint filed in state court, *see Nature's Medicine v. CCC*, No. 2085CV00463 (Worcester County Superior Court).

6. Specifically, to determine suitability and other qualifications for licensure, the CCC is required to ascertain whether an individual or entity associated with an ME or MTC has committed, permitted, aided, or abetted any illegal practices in its operations. G.L. c. 94G, § 4(a)(xv) and (xiv); 935 CMR 501.801 (establishing requirements for suitability to operate as a ME); 935 CMR 501.801 (establishing requirements for suitability to operate as an MTC). To investigate, the CCC anticipates that it will need to serve interrogatories, to solicit affirmative statements and, if necessary, to conduct interviews that may refer to protected information.

7. In the performance of its legitimate regulatory duties, the CCC, through Christine Baily, its General Counsel, and Yaw Gyebi, its Chief of Investigation and Enforcement, will seek to limit the scope of disclosure by taking steps that include, but are not limited to, the following:

    a. Consulting with federal prosecutors on the scope of disclosure of protected information needed, and providing CCC investigatory materials to the extent necessary for prosecutors to comply with their discovery obligations.

    b. Seeking to restrict the number recipients of any protected information as part of its investigative and other administrative processes.

    c. Seeking to restrict the public disclosure of any protected information. *See*, *e.g.*, G.L. c. 4, § 7(26)(f) (allowing agency subject to the Public Records Law to withhold from disclosure investigatory materials); G.L. 30A, § 21 (allowing deliberative body subject to the Open Meeting Law to enter into executive session).

    d. Providing a state reviewing court with the operative protective order issued by this Court and requesting a protective order or an in-camera review if it becomes necessary for the CCC to create a record in accordance with G.L. c. 30A, § 14(4)[2] and defend its actions in court.[3]

8. In particular, in *Nature's Medicines, Inc. v. Cannabis Control Commission*, the CCC is required to create a record of its administrative proceedings that may contain protected

---

[2] "The agency shall, by way of answer, file in the court the original or a certified copy of the record of the proceeding under review. The record shall consist of (a) the entire proceedings, or (b) such portions thereof as the agency and the parties may stipulate, or (c) a statement of the case agreed to by the agency and the parties." G.L. c. 30A, § 14(4).

[3] *See, e.g.,* G.L. c. 30A, § 14 (judicial review of agency decisions requires the agency to file a "copy of the record of the proceeding under review"); Mass. Super. Ct. Standing Order 1-96 ("The administrative agency whose proceedings are to be judicially reviewed shall . . . [file] the record of the proceeding under review," which "'shall consist of (a) the entire proceedings, or (b) such portions thereof as the agency and the parties may stipulate, or (c) a statement of the case agreed to by the agency and the parties.'" (citing G.L. c. 30A, § 14(4)).

information.  The CCC requests this Court's explicit permission to share protected information in connection with that litigation.

9. Through counsel, the CCC has read and understands the proposed Second Amended Protective Order.

10. Through counsel, both defendants assent to this motion.

11. Attached hereto is a proposed Second Amended Protective Order, including an Acknowledgement of Protective Order executed by the General Counsel and the Chief of Investigations and Enforcement for the CCC.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     */s/ Zachary R. Hafer*
        Zachary R. Hafer
        Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

*/s/ Zachary R. Hafer*
Zachary R. Hafer
Assistant U.S. Attorney

Date: June 25, 2020