UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


```
                                  )
UNITED STATES OF AMERICA,         )
                                  )          Criminal Action
          Plaintiff,              )          No. 18-10364-DPW
                                  )
v.                                )
                                  )
JASIEL F. CORREIA, II,            )
                                  )
          Defendant.              )
                                  )
```


BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE


VIDEOCONFERENCE


December 15, 2020
10:31 a.m.


John J. Moakley United States Courthouse
One Courthouse Way
Boston, Massachusetts  02210


Kelly Mortellite, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

1    APPEARANCES:

2    On Behalf of the Government:
     Zachary R. Hafer
3    David G. Tobin
     United States Attorney's Office MA
4    1 Courthouse Way
     Suite 9200
5    Boston, MA 02210
     617-748-3106
6    zachary.hafer@usdoj.gov
     david.tobin@usdoj.gov

7

8    On Behalf of the Defendant Jasiel Correia, II:
     Kevin J. Reddington
9    Law Offices of Kevin J. Reddington
     1342 Belmont Street
10   Suite 203
     Brockton, MA 02301
11   508-583-4280
     kevinreddington@msn.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    P R O C E E D I N G S

2          COURTROOM CLERK:  For everyone joining us, if you can

3    make sure that you put your devices on mute.  And for the

4    attorneys, just make sure that you unmute before you address

5    the judge.  And I want to remind everybody to abide by Local

6    Rule 83.3 which states that no photography, recording or

7    broadcasting of this proceeding is allowed.  Are we all set to

8    go?

9          MR. REDDINGTON:  Yes.

10         COURTROOM CLERK:  Criminal Action Number 18-10364,

11   United States v. Jasiel Correia.

12         THE COURT:  Well, I thought that it would be important

13   to have a scheduling conference in light of the plea earlier

14   this week by the co-defendant which changes the structure, the

15   potential structure of the trial.

16         As you know, I severed counts in the case but did not

17   sever the defendants.  But now we have a single defendant.  It

18   strikes me that severing the counts is probably not appropriate

19   here if we go forward.  I recognize that there are difficulties

20   that are presented.  Ms. Beatty indicated to me that you were

21   talking about potential time and that sort of thing for the

22   trial.

23         MR. REDDINGTON:  Yes, Your Honor.

24         THE COURT:  And I'd like to hear about that.  I guess

25   I had come to the conclusion even before the plea that we put
```

1   off pretrial that involved being present in the courtroom

2   because of the spike, the surge that we're seeing, and I'm

3   obviously sensitive to that.  It poses real problems for

4   trials.  And part of the issue is to assure that those people

5   who are required to be in the courthouse are safe and feel that

6   generally, so that will be a major consideration for me.

7           We're out sufficient time so I wouldn't want to say no

8   at this point even to the schedule that was earlier indicated,

9   but I suspect that you're going to need more time if it's a

10  broader case in terms of the activities that will be the

11  subject of evidence.

12          So that's by way of general introduction.  I don't

13  know, Mr. Hafer, if you want to take the leading role here, or

14  Mr. Reddington.

15          MR. HAFER:  Thank you.  I'm happy to, Your Honor.

16  Thank you.

17          Mr. Reddington and I have been talking regularly since

18  the disclosure of the Rule 11 for Ms. Andrade.  We're in

19  agreement actually, Your Honor, that what I'll call SnoOwl

20  counts, 1 to 13, should come back in.  We actually agree on

21  that.

22          I'm happy to explain all the factual overlap, but I

23  think as both Mr. Reddington and I were preparing just for the

24  corruption-related portion of the case, it became clear that

25  there's so much overlap it would be very, very hard to cut it

1    out.  So I'm happy to provide the factual basis.  But since

2    Mr. Reddington and I agree, the severance came from

3    Ms. Andrade, so for piece one on the scope and structure of the

4    trial, I think we're in agreement.

5         THE COURT:  Okay.  Let me just pause with that.  I'm

6    not going to inquire more into the agreement.  I'm pretty

7    familiar with the facts and circumstances here.  If the parties

8    are prepared to go forward with the entire case, that makes

9    sense to me.

10        MR. REDDINGTON:  Absolutely.

11        THE COURT:  And it would be a longer trial, obviously,

12   because irrespective of overlap, there are additional witnesses

13   and so on, but we'll make that arrangement.

14        MR. HAFER:  Correct, Your Honor.  And Mr. Reddington

15   and I have talked about that, and fortunately the *Jenks* was all

16   produced for both portions of the case a long time ago, so we,

17   I think, are not as far behind the eight ball as we normally

18   would be.

19        We were going to propose to Your Honor considering the

20   additional witnesses that would be required, mindful of what's

21   going on with the pandemic.  We were going to propose February

22   22nd, which would be an additional three weeks.  We can have an

23   updated witness list to the court by the end of this week.

24        There's no doubt that it adds witnesses.  My

25   back-of-the-envelope estimate today would be about 15

1    additional witnesses, although most of these would be

2    shorter-type witnesses.  So I think it realistically maybe adds

3    about a week, so we'd be looking at somewhere between two and

4    three to do the whole thing, Your Honor.

5          Mr. Reddington and I are working very closely.  We

6    already have some additional stipulations.  As you know, we

7    have reached agreement on several stipulations on the

8    corruption portion of the case that Ms. Andrade wasn't prepared

9    to stipulate to, so that will carve out some witnesses that we

10   already had anticipated in the first portion of it.  We will

11   work for anywhere we can stipulate in part two.

12         Mr. Reddington and I have tried cases like this

13   together before and try our hardest to sort of just get to what

14   needs to be tried and not make it -- and we're even more

15   mindful of that now.

16         So we would propose, Your Honor, trying all the

17   remaining counts.  We'd love to have the 22nd trial date

18   because then I can get all the SnoOwl witnesses under subpoena.

19   We can confirm whether there are travel or quarantine issues.

20   I think it gives us some extra room for the vaccine to get

21   rolled out, and hopefully, you know, conditions improve.

22         I think we would certainly not want to do anything in

23   January, given current conditions.  And we're certainly

24   prepared to continue to do these types of pretrial hearings by

25   Zoom and keep everything out of the courtroom as long as

1    possible.  So that would be our proposal, Your Honor.

2            THE COURT:  Well, it's not that I want to foreclose

3    you, Mr. Reddington, but Mr. Hafer seems to be speaking for

4    both of you, at least in these structural kinds of things.

5            MR. REDDINGTON:  He's doing a great job.

6            THE COURT:  Okay.  So far, so good.  The 22nd is a day

7    I would grab now and use.  Obviously I have to make

8    arrangements with my colleagues, but I think that we can have

9    the 22nd for the beginning of jury selection, which is going to

10   take a little bit of time, perhaps, in this case.  But we'll

11   use that.

12           I'll use the assumption that it's going to be a

13   three-week trial.  It bumps up against the next trial that I

14   have scheduled, but that will just simply get moved along in

15   the train.  The one thing I do want to do, because I'm mindful

16   of the potential for public health difficulties, is maybe have

17   a backup date of some sort.

18           MR. HAFER:  Sure.

19           THE COURT:  And I don't know if the parties have a

20   view about that, whether or not you want to raise that view at

21   this point or think about it some more.  I have things

22   scheduled, but this will take priority over them.  And I would

23   carve out the backup date as well as the 22nd to assure that,

24   given the large number of people, that they're going to be able

25   to be present at the trial and then any arrangements that you

1    have to make about their presence or the difficulties related

2    to the presence can be ironed out ahead of time, but at least

3    you've got two dates that you can work with.  Rather than put

4    you on the spot to tell me right now, what I'm going to suggest

5    is that you talk about it, see if there's a date that works for

6    you.

7             I have to say that I scheduled yesterday a civil case

8    involving a challenge to the referendum regarding motor vehicle

9    information, and I want to hold to that date.  That's on June

10   14.  In the time in between, I probably have dates that I can

11   consider there.  I will probably have an issue with middle of

12   April, but if that's what works for a backup date for you guys,

13   I'll consider that as well.  But it's really -- I'll be here,

14   so you tell me when you'll be here.

15            MR. REDDINGTON:  I'm ready to rock and roll, Judge,

16   and I certainly would accommodate the court and Mr. Hafer as

17   far as scheduling.  Whatever I already have scheduled, I'd

18   certainly move whatever that backup may be.

19            THE COURT:  All right.  So why don't we put it this

20   way:  that I'll get the updated version of the witness list

21   from you, Mr. Hafer, on Friday, and I would hope that included

22   in that is some understanding between the parties about what a

23   good backup date is, assuming that the 22nd may not be feasible

24   at some point, but right now I consider it to be feasible and

25   I'm proceeding on that assumption.  All right?

1           MR. HAFER:  Thank you, Your Honor.  Yes, that's fine.

2           THE COURT:  Okay.  Anything else that we need to talk

3  about at this point?  Once we get past the new year, I think I

4  will want to have you come in and walk through what the

5  courtroom will look like for the trial itself.  That was

6  something we planned to do but didn't get a chance to do, but I

7  think it would be helpful in shaping your views about how

8  things proceed.  But we'll do that later on.  Right now we'll

9  try to get these broad dates set up and fixed.

10          MR. HAFER:  That's great, Your Honor.  Thank you very

11  much.

12          THE COURT:  Okay.  If there's nothing further, then

13  we'll be in recess.  Thanks very much.

14          (Adjourned, 10:42 a.m.)

1                 CERTIFICATE OF OFFICIAL REPORTER

2

3           I, Kelly Mortellite, Registered Merit Reporter

4  and Certified Realtime Reporter, in and for the United States

5  District Court for the District of Massachusetts, do hereby

6  certify that the foregoing transcript is a true and correct

7  transcript of the stenographically reported proceedings held in

8  the above-entitled matter to the best of my skill and ability.

9               Dated this 21st day of June, 2021.

10

11              /s/ Kelly Mortellite

12              _____

13              Kelly Mortellite, RMR, CRR

14              Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25