```
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS


                                  )
 UNITED STATES OF AMERICA,        )
                                  )        Criminal Action
          Plaintiff,              )        No. 18-10364-DPW
                                  )
 v.                               )
                                  )
 JASIEL F. CORREIA, II,           )
                                  )
          Defendant.               )
                                  )


         BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
              UNITED STATES DISTRICT JUDGE


                      VIDEOCONFERENCE


                      April 9, 2021
                       9:36 a.m.


        John J. Moakley United States Courthouse
                   One Courthouse Way
              Boston, Massachusetts  02210




                              Kelly Mortellite, RMR, CRR
                              Official Court Reporter
                              One Courthouse Way, Room 3200
                              Boston, Massachusetts  02210
                              mortellite@gmail.com
```

```
 1   APPEARANCES:

 2   On Behalf of the Government:
     Zachary R. Hafer
 3   David G. Tobin
     United States Attorney's Office MA
 4   1 Courthouse Way
     Suite 9200
 5   Boston, MA 02210
     617-748-3106
 6   zachary.hafer@usdoj.gov
     david.tobin@usdoj.gov
 7

 8   On Behalf of the Defendant Jasiel Correia, II:
     Kevin J. Reddington
 9   Law Offices of Kevin J. Reddington
     1342 Belmont Street
10   Suite 203
     Brockton, MA 02301
11   508-583-4280
     kevinreddington@msn.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                   P R O C E E D I N G S
 2            COURTROOM CLERK:  I just want to remind you to please
 3   keep your devices on mute, and also you need to abide by Local
 4   Rule 83.3, which does not allow any photography, recording or
 5   broadcasting of these proceedings.
 6            If counsel is all set, I'm going to let the judge in.
 7            MR. HAFER:  Thank you, Barbara.
 8            MR. REDDINGTON:  Thank you, Barbara.
 9            COURTROOM CLERK:  Criminal Action 18-10364, United
10   States v. Correia.
11            THE COURT:  Well, I've circulated or asked Ms. Beatty
12   to circulate and put on the docket a memorandum that identifies
13   the way in which the indictment would be redacted as a way of
14   focusing our attention on the issues in the case, and I'll get
15   back to it in just a moment.
16            I do want to talk a bit about schedule.  We're doing
17   everything possible to make full days available for trial.
18   There may be a couple days of the week I've got to attend to
19   other matters, but you can anticipate that most of this trial
20   will take place on a full-day schedule, and the full-day
21   schedule that I'm talking about is 9:30 to 12:30 with a break
22   for lunch and then from 1:30 to 4:15.  There would be a
23   15-minute break both in the morning session and the afternoon
24   session.  This seems to me to balance as best we can the
25   competing obligations that the parties have for matters that
```

1  they have to deal with as well as my own obligations to deal
2  with.
3           I think that the next formal pretrial, as I look at
4  this, should be on April 19.  That's the day before the jury
5  selection is supposed to start.  That will provide an
6  opportunity to deal with last-minute issues but also to go over
7  the way in which the jury selection process will be set up and
8  more particularly the adjustment that the clerk's office has
9  been making to try to ensure a somewhat larger jury pool.
10          It appears that the clerk's office is able to,
11 consistent with the social distancing obligations that we have,
12 the clerk's office is able to make possible 30 persons in each
13 of the two sessions there.  I've discussed it with them.
14 They've outlined it for me.  You'll get to see how that works
15 here.
16          But that then gets me back to the larger issue, and
17 it's a matter of very real concern on my part.  We are as a
18 court trying to deal with competing demands for limited
19 resources.  That is to say jury selection process in the Jury
20 Assembly Room, which is where that process has to take place,
21 and then the courtrooms themselves, but the difficult point is
22 the jury assembly area.  And I have obligations to my
23 colleagues, I believe, to be as timely as possible.
24          They have been willing to permit me to have the four
25 days following April 19, but my expectation is that I will be

1   able to pick the jury during that time period.  If I'm not,
2   that may cause a problem for purposes of rescheduling this case
3   because it's otherwise interfering with my colleagues' own
4   competing concerns for their cases.
5              So I outline that to make two fairly strong points.  I
6   believe that I have a special obligation to ensure the health
7   and safety of the people who are in the courtroom.  I believe
8   that we've done what we can do to provide safe accommodations
9   for people in the courtroom, but the people who we don't know
10  very much about are the jurors, potential jurors, and so there
11  will be some inquiry with respect to that, and I will make
12  whatever judgments I have to make in light of safety.
13             There's a second part.  That is, this is a case that's
14  acquired a certain amount of public press, media attention.  I
15  don't propose to make special orders with respect to the media.
16  I would hope that they would exercise common sense and
17  restraint and avoid harassing people who might be involved in
18  the process.  But I will be evaluating the jurors who actually
19  come up in terms of whether or not they have been tainted in
20  any way by press coverage or media coverage here.  I have an
21  obligation to balance a fair trial and a free press.  I'll do
22  my best to do that.  But ultimately, what trumps everything
23  else is to assure that the parties have a fair trial.
24             Now, we've had discussions about the way in which
25  objections can be raised here to preserve them for appellate

1    purposes, and I've expressed my view that it's pretty
2    important, although it's a choice that the parties have to make
3    for them to make contemporaneous objections.  I imagine that
4    they will arise in the context of challenges with respect to
5    particular jurors, either challenges to a determination I might
6    make that a particular juror is, in the words of the customary
7    clearance of jurors, indifferent.  That is, not subject to
8    challenge for cause.  And then we may deal with it in the
9    context of peremptory challenges.
10          Those are the principal ways of dealing with this.  I
11   also note that there is a reservation that's been raised by the
12   defendant that the circumstances of a trial under pandemic
13   conditions or at least conditions that are different from what
14   is customary in the courthouse is inherently suspect.  I'm
15   aware of it.  I can't decide whether or not it's well founded
16   until we've worked our way through the jury.  But those two
17   factors are going to be playing very heavily on my evaluation.
18          I think that what I would like to do to just clarify
19   the schedule a bit is the following.  We've had discussions
20   about witnesses, how much time witnesses are going to be
21   taking.  I have permitted the witnesses to -- the names of
22   witnesses to be submitted to the court in camera, and I'll
23   continue to do that until the witnesses actually appear.
24          But what I would like now is for the parties -- and I
25   think that this can be done by noon on Wednesday, is for the

1  parties to go through, scrub their lists, identify who the
2  particular witnesses are and more or less recognizing that
3  sometimes we have to change order but give me the order of the
4  witnesses and the likely amount of time that a witness is going
5  to take, having in mind what the schedule is in this case.
6        What I'd like you to do is just assume that you have
7  every one of those days to work on the full-day schedule that I
8  have.  It may be that I'll have to change that because of other
9  -- or modify it in some fashion because of other obligations in
10 other cases that I have.  But that will be minimum, as minimum
11 as I can possible make it, so we can move through this case as
12 promptly as possible and take as little time from the jurors as
13 we possibly can.
14        So what I would like from you by Wednesday noon is a
15 filing that identifies by name the witness who is going to be
16 appearing, the order in which the witnesses are appearing and
17 how much time that witness is going to take, and, as a kind of
18 pro forma, assume that you have every one of the days available
19 after the selection of the jury in the week of April 19.
20        I also want it in another form.  That is to say I
21 think that at this point the filings should be made in a public
22 setting but with the witnesses identified by witness A, witness
23 B, witness C, so that we don't run the risk of some overeager
24 and insensitive member of the media engaging in some sort of
25 inquiry of a potential witness which creates problems of

1  increased press and media coverage which can affect the jury
2  selection process but also may be harassing or perceived to be
3  harassing by potential witnesses.
4      So the filing that I'm talking about is in two forms.
5  One is one that is in camera that has the full names.  That
6  will be under seal here, but the parties will have it and we'll
7  have it so you've got some idea of how to plan effectively.
8  Then filed on the record, unsealed, will be the witness order
9  and timing with the witnesses identified by A, B, C.  I'll use
10 that as a way of dealing with it.  And I would of course want
11 to have -- I think I can work it out myself, but the parties
12 can help me I think by having what I'll call a concordat.  That
13 is to say, filed in camera, an identification of the witness by
14 name and the identification of the alphabetical designation of
15 the witness so we can just follow along on this.
16     This seems to me to be the best way to ensure that
17 there's as much disclosure of how the case is going to try as
18 is consistent with avoiding problems of jury taint, broadly
19 conceived, that I identify.  I then would want the parties to
20 file by Thursday any pretrial motions that you might have, and
21 we can probably talk about what might be on the horizon here at
22 this point, and they may be motions in limine, that sort of
23 thing.  We'll just have to deal with those.  And those are
24 things that I think we can deal with on Monday the 19th where,
25 although it is a holiday, formally a holiday, the court is open

1   on a skeleton staff.  And in fact, I'm, as I think I told you,
2   going to be conducting two naturalization ceremonies here on
3   the second floor.  But I would think that if we planned on
4   getting together on Monday and you block out that time,
5   assuming that we're going to have the full day available
6   subject to the naturalization ceremony, that that would be a
7   prudent thing to do.
8            Now, let me turn back to the redacted indictment here.
9   We talked a little bit about this ahead of time, but I wanted
10  to reaffirm it in the sense of giving you a form redaction, in
11  which, as I've indicated, I intend only to use the actual
12  charging paragraphs here, and I've used alphabetical
13  designations of the counts, but again, I'll do a concordat that
14  demonstrates what count relates to what count of the second
15  superseding indictment.
16           Part of that frankly was brought home to me when I did
17  provide a redacted, as I frequently do, indictment that could
18  go to the jury so that they understand what the charges are
19  that they're going to be addressing in a case probably 25 years
20  old that came back for resentencing as a result of a variety of
21  factors like the First Step Act.  And it was hard for us to
22  reconstruct what the counts were.  We were able to, but it was
23  hard to do it, so I think I'm going to be doing that on the
24  front end of it.
25           Now, when I say a concordat, this is all premised on

1    the idea that nothing is going to go to the jury that has not
2    been -- for which there's not sufficient evidence in the case.
3    I say "sufficient evidence," enough for a jury determination on
4    it.  So it's not going to the jury in any form until after the
5    case has been presented to the -- has been argued to the jury
6    that I start my instructions.
7            Those of you who have tried before me probably are
8    familiar with the way in which I treat the redacted indictment
9    as an artifact during my general initial instructions.  I just
10   tell the jury it's a piece of paper, or several pieces of
11   paper, but it doesn't mean anything other than this is what the
12   government sets out to prove beyond a reasonable doubt.  And
13   they'll have it before them during instructions, but we don't
14   have to have it in final form at that point.
15           Now, that brings me to a second issue.  I have gone
16   through this and tried not to include or introduce any new
17   language of any kind in this, with the exception I'll come to
18   in a bit.  Nevertheless, the superseding indictment refers to
19   people as -- without identifying them by specific name, as
20   investors or middlemen or vendors.  I would anticipate that we
21   would substitute, if there's proof, substitute specific names
22   there after the case is ready to go to the jury.  I of course
23   will consider any arguments that might be made about
24   introducing something that was not in the indictment itself.
25           The second thing, and this is not something that I've

1   highlighted particularly on the redacted version, I might
2   consider including the relevant exhibit numbers for the
3   communications that are at issue for the tax forms that are at
4   issue for the underlying invoices or receipts that are at
5   issue, in other words, those identified documents in the
6   redaction that you see under things like official acts or tax
7   years or description of wire communications, I haven't come to
8   that either, and of course I'll hear argument about that, but
9   simply to focus the jury on what it is that the government
10  maintains in the case.
11          That brings me then to an issue that became clearer in
12  the sense that it became unclear.  And that's the way in which
13  the forfeiture has been charged.  As I said, I don't want to
14  change language in the submission to the jury.  I don't know
15  whether the parties are going to agree about forfeiture or
16  whether or not the government would be pursuing alternative
17  mechanisms for forfeiture, but as I look at the charging
18  language, it's a bit unclear.
19          I've said, and you can see the references, that
20  property described in Counts N through V, that's taking out --
21  I'm now looking at page 10.  That's taking out the kind of
22  language that talks about realleging prior counts.  I don't
23  think it's altogether clear what it is that it's talking about
24  here.
25          Now, I don't think we have to get to this right away,

1    but I want to put everybody on alert that that's a matter of
2    concern, such that I'm going to have to be satisfied that I can
3    properly send it to the jury in a redacted form.  And at this
4    point, I'm not.  But that is, as I said, something that it
5    became clear to me is unclear to me, and that's why I raise it
6    now so that you can think about it.
7           And I think this is in the government's wheelhouse,
8    Mr. Hafer.  I'm sure you'll want to discuss it with people who
9    do asset forfeiture and that sort of thing to see exactly what
10   your position is with respect to that.  But at a minimum
11   there's going to have to be some tidying up.  I took a shot at
12   it by referring to Counts N through V, but I'm not sure that
13   properly captures it either.  And we'll have a further
14   discussion about that.
15          So that's the broad outline of what I wanted to set
16   up, which is an outline for further discussion, I suppose.  But
17   having spoken at length, I want to hear what the parties have
18   to say about any aspect of this broad outline.  Mr. Hafer, if
19   you want to go forward first.
20          MR. HAFER:  Yes, Your Honor.  That all sounds good.  I
21   just, if I could, just a clarification or two on a few things
22   that Your Honor said, but the broad outline sounds good.  The
23   government will be ready, and we appreciate items on schedule.
24   It's very helpful as we work with witnesses.
25          On that point, just for the filing that you want next

1   Wednesday, or the two filings, the one in camera and the
2   public, you suggested a couple of times, you know, anticipate a
3   full -- anticipate the 9:30 to 12:30, 1:30 to 4:15 schedule.
4               THE COURT:  1:15 to 4:15.
5               MR. HAFER:  Sorry, 1:15 to 4:15.  In addition, to just
6   giving you time estimates, would you like Mr. Reddington and I
7   to propose Tuesday April 27, witness D, E, F, G, H?  Do you
8   want us to do it that way?
9               THE COURT:  I want you to do that as a pro forma.  You
10  may not get those dates, but the pro forma will be helpful to
11  me to understand this.  And of course if there are some
12  witnesses that have some particular timing problems, I want to
13  have that identified.  They may not be accommodated, but at
14  least I want to know it.  And it's not just that a witness has
15  a preference for being somewhere else here.
16              The witnesses are I assume under subpoena or at least
17  under control of the parties so that they're able to adjust
18  their schedules here, and I'm not generally in the business of
19  saying, "Oh, you would like to go to Filene's in the morning
20  and go to a sale."  That's not going to be enough for me.  But
21  if there's some special problem, I of course want to know about
22  that.
23              And I should add that I do -- recognizing that the
24  defendant does not bear any burden, there's been cooperation, I
25  do want to know the defendant's potential witnesses in the case

1  so I can block this out as part that process.  But yes, I do
2  want it in that form.
3          MR. HAFER:  Understood.  And just on that point, Your
4  Honor, just as a general update of the witnesses that you and
5  Mr. Reddington are aware the government is planning to call, I
6  think we're down to three where there's a request, what we view
7  as a meritorious request to testify remotely.  I'm continuing
8  to discuss those with Mr. Reddington, but I think in all the
9  circumstances, it's not a bad place to be, but I just wanted
10 you to know that we have three now, a smaller number.
11         THE COURT:  Well, if there are disputes about it, I'll
12 resolve them.  If there are people who have physical issues,
13 that goes to a question of unavailability I suppose that can be
14 dealt with by doing remote presentation or by depositions as
15 well.
16         In any event, I encourage you to work your way through
17 that because that raises the parallel issue, that is, if the
18 individual is concerned about their health, then people who are
19 in the courtroom have concern about their health, too.  There's
20 a reciprocal dimension to the public health process.  One is
21 someone who is vulnerable themselves but also someone who might
22 spread the virus because of their own vulnerability.  In any
23 event, that's what I'm weighing on the public health issues.
24         MR. HAFER:  I'll just -- if it's okay, Your Honor,
25 I'll just tick through my other couple of issues quickly?

1        THE COURT:  Sure.

2        MR. HAFER:  As you know, we have several represented

3   witnesses in this case.  There are -- we anticipate -- I know

4   you know there are individuals with cooperation agreements,

5   many of the immunized witnesses obviously have counsel.

6        Those counsel have requested the ability to be present

7   in the courtroom when their clients testify.  I've made clear

8   to all of them that, you know, the court's number one priority

9   is safety and that the numbers in the courtroom are going to be

10  very strictly and tightly controlled, but I said -- because you

11  and Mr. Reddington and I have discussed this before, I said I

12  would communicate and you've asked me about the number of

13  people in the courtroom, I wanted to make you aware -- and I've

14  let them all know there's going to be overflow rooms as well,

15  but I wanted to make you aware that that request exists for no

16  more than one and obviously only during the testimony of the

17  client but that that request is out there for the represented

18  witnesses.

19       THE COURT:  Well, I appreciate being updated on that.

20  The presence of counsel in the courtroom under ordinary

21  circumstances would be permitted.  On the other hand, counsel

22  doesn't get up to object, doesn't have really a speaking role

23  in the case, and generally, unless there's something quite

24  remarkable that takes place, I won't adjourn the testimony of a

25  witness so that the witness can talk to his counsel during the

1    midst of their testimony.
2              That having been said, under ordinary circumstances, I
3    would permit them to be in the courtroom, and I would like that
4    as part of the census in the courtroom.  I should add that one
5    or another member of the press, I'm told, has asked for premium
6    seating in the courtroom.
7              This is not that kind of event.  I'll consider if it's
8    necessary having a pool seat for the press, or seats, but we're
9    pretty tight on the number of people that we can have in the
10   courtroom.  And as you've said, we're planning to have overflow
11   courtroom space that provides as much as we can in the Zoom
12   setting every opportunity to observe everything that's going on
13   in the courtroom.
14             So we'll be doing a census virtually every day on who
15   is going to be in the courtroom, and I would at this point want
16   to receive from the parties -- we've talked about it, but let's
17   make it part of that Wednesday statement, a listing of those
18   people that the defendant and the prosecution expect to be in
19   the courtroom, including requests by lawyers who want to be
20   there to represent their client or at least be present in the
21   courtroom for their client so that we can talk that through.
22             MR. HAFER:  Thank you, Your Honor.  Just the last
23   thing on the forfeiture, I saw your order obviously this
24   morning, and it's not an issue I've engaged on closely
25   recently.  I already sent it to our asset forfeiture head, and

1    she and I are going to speak later today.  So I will circle
2    back on that, but thank you for the heads-up.
3             THE COURT:  I think you should look at it as an
4    opportunity to educate me on that or think that perhaps the
5    indictment may not be the mechanism by which forfeiture, if
6    it's available, is taken.  But I'm not going to change the
7    indictment in any material form, as I said, and I have some
8    question about whether or not the references there really do
9    cover forfeiture.  So, to be continued.  You'll get back to me
10   on that.
11            MR. HAFER:  Your Honor, just the last thing just for
12   Your Honor to think about.  I've spoken about this with
13   Mr. Reddington.  Obviously, we've talked about reducing the
14   movement around the courtroom and having some type of exhibit
15   binder on the stand with the witnesses when they testify.
16            In that same vein, I was thinking it would be helpful
17   for witnesses at least who testified in the grand jury, which
18   is going to be a substantial proportion of the witnesses who
19   testify at trial, that they also have grand jury -- a separate
20   binder perhaps on the witness box while they're testifying with
21   their grand jury for refreshing recollection, for impeaching,
22   just so that's something we can at least anticipate in advance
23   if it's needed to refer them to it without having to move back
24   and forth.  I thought it could be a useful thing to do.  I just
25   wanted to flag that for you.

1           THE COURT:  I think that is the way that I prefer to
2  do it.  I don't want to have transcripts up on the screens, and
3  I'm fairly rigorous about the use of prior testimony and the
4  use to refresh recollection as opposed to prior testimony for
5  purposes of impeachment.  But in any event, I think the most
6  efficient way of doing it would be to have that document there
7  or a binder there that the witness could look at when the
8  witness is permitted to look at it and not otherwise, but it's
9  just there as more efficient in that fashion, as it would be
10 for particular documents that might be contested in some
11 fashion as to which a particular witness might find it easier
12 to look at a binder than to look at the document up on the
13 screen.  I don't want it to be, you know, piles of documents in
14 front of a witness who is testifying.
15          MR. HAFER:  Sure.
16          THE COURT:  But just whatever is most efficient to
17 deal with anticipated issues.
18          MR. HAFER:  Thank you, Your Honor.  That's all for me.
19          THE COURT:  Okay.  Mr. Reddington, any comments that
20 you'd like to make or observations or requests or whatever?  I
21 think we have you off mute.  There may be a freezing problem
22 here, too.
23          MR. HAFER:  There he is.
24          MR. REDDINGTON:  I hear you.  No problem.
25          THE COURT:  All right.  So we've got a structure for

1   this, and, you know, more to come obviously and more precise
2   things to come, but I think we've got a way of getting moving
3   forward on this.
4          I just want to emphasize what I've emphasized all
5   along, that the important thing for me is that we have a trial
6   in which the trial participants are safe, and I have a special
7   obligation to do whatever I can to assure that and make the
8   choices that sometimes become necessary for doing that.
9          And second, that it's a fair trial, that is, that we
10  get a group of jurors who can fairly and impartially decide
11  this case without some prior predisposition and who demonstrate
12  a willingness to and ability to follow the court's instructions
13  here.  And to the degree that they are tainted by media
14  coverage in any way, that will be problematic.
15         But having worked in the media myself, I know people
16  can exercise prudent restraint without compromising their
17  responsibilities as members of the media.  I also know that
18  they can act imprudently and frankly in a fashion that
19  undercuts constitutional fair trial rights.
20         And I know that when I see it, so fair warning to
21  everyone involved.  And to the degree that a jury cannot be
22  impaneled, that will result in my assessment of responsibility
23  under these circumstances.  So if there's nothing further then,
24  I think we can be in recess at this point.
25         MR. HAFER:  Thank you, Your Honor.

1          THE COURT: Thanks very much. We'll be in recess.
2          (Adjourned, 10:09 a.m.)
3                      ------------------------
4                    CERTIFICATE OF OFFICIAL REPORTER
5          I, Kelly Mortellite, Registered Merit Reporter
6    and Certified Realtime Reporter, in and for the United States
7    District Court for the District of Massachusetts, do hereby
8    certify that the foregoing transcript is a true and correct
9    transcript of the stenographically reported proceedings held in
10   the above-entitled matter to the best of my skill and ability.
11               Dated this 21st day of June, 2021.
12
13               /s/ Kelly Mortellite
14               _____
15               Kelly Mortellite, RMR, CRR
16               Official Court Reporter
17
18
19
20
21
22
23
24
25