UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 18-10364-DPW |
| v. ) | |
| ) | |
| JASIEL F. CORREIA, II ) | |
| ) | |
| Defendant ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

Regarding the corruption of former Fall River Mayor Jasiel F. Correia, II, this Court noted:

> It's striking that it could be conducted in the way that it was conducted in the 21st Century. It is redolent of an earlier time in this country and perhaps what goes on in other countries as well. This idea of shaking people down, taking money for giving somebody a job, it's the crudest form of corruption and, as I said, striking that it would continue to take place.[1]

The crudeness of Correia's corruption is all the more striking given that it principally occurred at a time when he knew he was already under federal investigation for stealing hundreds of thousands of dollars and cheating on his taxes. Moreover, unlike some crooked politicians who eventually accept responsibility, Correia remains defiant and in denial – even after a trial in which 33 witnesses testified against him, the jury convicted him of 21 felonies, and his own lawyer praised the fairness of the proceedings. In fact, Correia has not only failed to take any responsibility, he bizarrely claimed – after choosing not to testify – that "the real truth" would eventually come out, and that his trial was a failure of the justice system.

This is no ordinary case. The betrayal of people who considered him like family, the pervasive lying, cheating, stealing, and blame-shifting, and the egregious breaches of the public

---

[1] *See United States v. Camara*, 19-10333-DPW, ECF Dkt. No. 47; 7/21/21 Tr. at 19.

trust must be met with a sentence that thoroughly repudiates the defendant's abhorrent conduct and deters both this defendant and others like him from doing it again.

Accordingly, for the reasons set forth below, the government respectfully requests that the Court sentence the defendant to:

- 132 months' incarceration;
- 24 months' supervised release;
- $298,190 in restitution to certain SnoOwl investors;[2]
- $20,473 in restitution to the IRS;[3]
- $566,740 in forfeiture;[4] and
- a mandatory special assessment of $2,100.

---

[2] As reflected in Trial Exhibit 69 and the government's motion for forfeiture, ECF Dkt. No. 296, this amount is distributed to the individual SnoOwl investors as follows: $145,000 to Dr. David Cabeceiras; $70,000 to Stephen Miller; $25,000 to Mark Eisenberg; $25,000 to Victor Martinez; and $33,190 to Carl Garcia. Because of their criminal association with Correia, the government does not seek restitution for investors Hildegar Camara or Antonio Costa.

[3] This amount consists of $10,898 for Count L (False 2013 Form 1040X) and $9,575 for Count M (False 2014 Form 1040X). Tax Counts J and K do not have any additional restitution, as the total additional tax due for the 2013 and 2014 tax years is included in the above amounts.

[4] The factual basis for the forfeiture (money judgment) amount is set forth in the government's motion for same, ECF Dkt. No. 296.

I.  <u>Advisory Sentencing Guidelines</u>

The Guidelines are calculated at ¶¶ 116-136 of the Presentence Report ("PSR") as follows:

<u>Group One – Counts 1-13ss (Wire and Tax Fraud)</u>

i. in accordance with USSG § 2Bl.1(a)(1), defendant's base offense level is 7;

ii. in accordance with USSG § 2Bl.1(b)(1)(G), because the defendant stole approximately $228,843 from the SnoOwl investors, the base offense level is increased by 10 levels;

<u>Adjusted Offense Level (Group One):  17</u>

<u>Group Two – Counts 14-21ss (Extortion and Extortion Conspiracy)</u>

i. in accordance with USSG § 2Cl.1(a)(1), because defendant was the elected mayor of Fall River at the time of the offenses, the base offense level is 14;

ii. in accordance with USSG § 2Cl.1(b)(1), because the offense involved more than one bribe or extortion, the base offense level is increased by 2 levels;

iii. in accordance with USSG §§ 2Cl.1(b)(2) and 2B1.1(b)(1)(H), because the extortions involved more than $550,000, but less than $1,550,000, the base offense level is increased by 14 levels;

iv. in accordance with USSG §§ 2Cl.1(b)(3), because the offense involved an elected public official in a high-level or sensitive decision-making position, the base offense level is increased by 4 levels;

v. Adjusted Offense Level (Group Two):  <u>34</u>

vi. Total Offense Level (after grouping):  34;

vii. <u>Guidelines Sentencing Range:  151-188 months</u>

As the government informed Probation, it does not object to its Guidelines calculations. Other than a minor factual correction regarding the material misstatements that went to the jury on the fraud counts, *see* PSR at ¶ 9, the government has no other objections to the PSR.

II.     The 21 Federal Crimes for which the Jury Convicted Correia

On May 14, 2021, a federal jury convicted the defendant of 21 of the 24 counts with which he was charged in the Second Superseding Indictment.  *See* ECF Dkt. No. 229.  The evidence against Correia, summarized at length in ¶¶ 6-107 of the PSR, consisted of testimony from approximately 33 witnesses (one of whom testified twice), 225 exhibits, and several stipulations.  In essence, after lying to and stealing from investors to fund his lavish lifestyle, Correia cheated on his taxes; then, once in office, he corruptly demanded hundreds of thousands of dollars in bribes in return for the issuance of non-opposition letters to marijuana vendors.

III.    Correia's Post-trial Statements

Shortly after his conviction and the conclusion of a trial that was universally acclaimed for how it was conducted,[5] Correia told reporters assembled outside of the courthouse that, "[u]nfortunately, the justice system failed us today…"  Notwithstanding the overwhelming sworn testimony of over 30 witnesses, corroborated by hundreds of exhibits, including bank records and receipts bearing his own signature, and his own decision not to testify, Correia claimed "there were no facts that were brought forward, there was no overwhelming evidence."  He further claimed that he would eventually be vindicated when "the real truth" came out and falsely stated that he was offered a plea deal but rejected it because he was not guilty.[6]

---

[5] As noted in an article by *Law 360*, Correia's attorney called the work the court did to put the trial on during the pandemic "incredible," noting that the trial "went off quite well."  The government called the trial a "model for how to conduct a trial during extremely difficult circumstances."  *See* https://www.law360.com/articles/1383266/ex-mayor-convicted-in-boston-s-1st-big-trial-of-pandemic

[6] As reported by *The Boston Globe*, the government never offered Correia a plea deal.  *See* https://www.bostonglobe.com/2021/05/14/metro/jury-convicts-ex-fall-river-mayor-jasiel-f-correia-ii-extortion-wire-fraud-filing-false-tax-returns/

IV. <u>Victim Impact</u>

Correia's white-collar crime spree left a trail of destruction in its wake. Be it the financial and emotional harm he caused the SnoOwl investors, the financial harm and public humiliation he caused the marijuana vendors, or the institutional, economic, and reputational harms he inflicted on the city of Fall River and its citizens, there can be little doubt Correia's crimes have seriously injured their many victims.

A. <u>SnoOwl Investors</u>

Having presided at trial, this Court is familiar with the trial testimony of the SnoOwl investors and purported business partners of Correia. In addition to that testimony, attached hereto as <u>Exhibits A and B</u> are victim impact statements from Dr. David Cabeceiras and Stephen Miller. As the below excerpts make clear, Correia caused Dr. Cabeceiras and Mr. Miller considerable harm.

- <u>Dr. David Cabeceiras</u> referred to the defendant's fraud as a "form of emotional exploitation," lamenting that Correia "took advantage of my kindness for nothing more than his personal gain and satisfaction." According to Dr. Cabeceiras, the $145,000 that Correia stole from him "was also a loss for my children and grandchildren." Dr. Cabeceiras described the "overwhelming" stress and "daily battle" with depression that Correia's actions have caused him. *See* <u>Exhibit A</u>.

- <u>Stephen Miller</u> referred to Correia's "layers of lies and deception" and how, after learning he had been defrauded and betrayed by Correia, he was "totally ashamed and embarrassed that he had deceived me." Mr. Miller noted that the "hard-earned" $70,000 that Correia stole from him was for his retirement and noted that Correia has "exhibited absolutely no remorse to his victims." *See* <u>Exhibit B</u>.

B. <u>Marijuana Vendors</u>

As this Court is also aware, several immunized marijuana vendors testified at trial that they felt forced to pay Correia a bribe if they wanted a license to operate in Fall River. While the marijuana vendors are not victims under the Crime Victims' Rights Act due to their participation in the extortion conspiracies, it is nevertheless worth noting the adverse collateral consequences

each has had to endure, including lost business opportunities, retaining counsel and obtaining immunity, and having to testify publicly, subject to effective cross-examination.

Of particular note, Matthew Pichette provided emotional testimony regarding the humiliation his family endured when the bribe he agreed to pay (designed as campaign contributions) became public, including the formal matter involving his wife that was initiated by the Office of Campaign Finance, ultimately resulting in a $5,000 fine. *See* 5/5/21 Tr. at 113-116. Like Pichette, Charles Saliby testified that he was never able to open his business, despite all the money he had invested, "[b]ecause the Cannabis Control Commission deemed me unsuitable because of my involvement with Jasiel Correia." *See* 5/5/21 Tr. at 191.

### C. Citizens of Fall River

This Court has spoken in related proceedings about the cost that Correia's (and Andrade's) crimes imposed on the citizens of Fall River. *See, e.g., United States v. Andrade*, 18-10364-DPW, 6/10/21 Tr. at 33. Some of these costs are quantifiable, like, for example, Correia's decision to put an additional $25,000 in his own pocket vis-à-vis Saliby's host community agreement, while depriving the city of Fall River of that money. *See, e.g.,* 5/4/21 Tr. (direct testimony of Joseph Macy) at 42-44.

Other of these costs, however, are intangible because, as this Court has noted, corruption "fundamentally undermines our sense of what a community is, a civic community is, a shared set of responsibilities and a shared set of opportunities working together to get things done." *See United States v. Costa*, 19-10333-DPW, 6/28/21 Sentencing Tr. at 39.

### V.    Other Notable Federal Corruption Sentences

Pursuant to 18 U.S.C. 3553(a)(6), "[t]he court, in determining the particular sentence to be imposed, shall consider the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct…" As the First Circuit held in *United States v. Reyes-Rivera*, 812 F.3d 79, 90 (1st Cir. 2016), Section 3553(a)(6) "is primarily aimed at national disparities, rather than those between co-defendants."[7]

Accordingly, several recent federal corruption precedents, both within and outside of this district, have informed the government's recommendation in this case.

- *United States v. Diane Wilkerson and Chuck Turner*, 08-10345-DPW: this Court imposed sentences of 42 and 36 months, respectively, on defendants Wilkerson and Turner for corruption that was far less substantial than the corruption offenses for which Correia has been convicted.

    - Notably, both Wilkerson's and Turner's sentences were within the applicable sentencing guidelines range. *See* ECF Dkt. Nos. 338, 394. Unlike Correia, Wilkerson also accepted responsibility for what she had done. *See* ECF Dkt. No. 332-1.

    - Regarding what was referred to at the time as the "Wilkerson Tax," this Court noted, "[t]his is a special harm to her particular community, not just to the Commonwealth at large, and while various of the letter writers I think thoughtfully and firmly believe that it is better to have someone, even someone with just a little bit of corruption, fighting for them than less-forceful voices, it is repugnant to the way in which we must do business in this country." *See* ECF Dkt. No. 346 at 10.

    - In sentencing Turner, this Court acknowledged defense arguments that the $1,000 bribe at issue, which involved the cooperating witness putting the money in Turner's hand, was "at a less-reprehensible level than someone who solicits..." *See* ECF Dkt. No. 406 at 63. By contrast, Correia solicited all of his bribes.

---

[7] As the First Circuit explained in *United States v. Marceau,* 554 F.3d 24, 33 (1st Cir. 2009), a defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences. Consistent with *Marceau*, this Court noted during the sentencing of a cooperator in this case, "[o]thers who didn't testify, weren't called to testify or chose not to testify, are to be evaluated under a different setting and one in which my sense of what's a reasonable sentence will not be subordinated in any fashion to the government's choices here." *See United States v. Camara*, 09-10333-DPW, ECF Dkt. No. 47; 7/21/21 Tr. at 26.

7

- *United States v. Salvatore DiMasi*, 09-10166-MLW: In this case, the district court imposed a sentence of 96 months on the former speaker of the house for accepting approximately $65,000 to wield influence on behalf of a Burlington, MA-based software company.[8]  *See* ECF Dkt. No. 674 at 3.  In so doing, the district court specifically invoked this Court's comments in *Wilkerson* that corruption sentences in Massachusetts had been too low.  *Id*. at 14.

    - Unlike DiMasi, whose sentence was based entirely on corruption (less pervasive than Correia's), Correia has also been convicted for stealing hundreds of thousands of dollars and cheating the IRS.

    - In imposing DiMasi's sentence, and in response to defense arguments about DiMasi's advocacy on behalf of his constituents, the district court noted, "there seems to be an attitude that if somebody supports causes that you care about, some corruption is to be expected. I think that's a pernicious paradigm. I think the people of this community and this country have a right to expect legislators who are completely honest and make their decisions on what to advocate based on the merits."  *See* ECF Dkt. No. 799 at 26.

- *United States v. Edwin Pawlowski*, 17-00390 (E.D.Pa.): on November 6, 2018, the former mayor of Allentown, Pennsylvania (a town similar to Fall River in size and demographics),[9] was sentenced to 180 months for several corruption related offenses and immediately remanded.  *See* Exhibit C.

    - Pawlowski's 15-year sentence was at the high end of the applicable guideline range.  *See* Exhibit D at 2.

    - Notwithstanding the range of corruption-related offenses for which Pawlowski was convicted, the parties agreed that the total loss amount for his crimes was $108,000, a lower number than Correia's.  *See* Exhibit D at 9.

---

[8] Because the Court determined that the value of the business DiMasi corruptly directed to the software company was many millions of dollars, DiMasi's low end guideline was determined to be 235 months.  *See* ECF Dkt. No. 674 at 9, 19-22.  DiMasi, however, received materially less money than Correia for his official acts.

[9] Like Correia, Pawlowski was re-elected while under indictment.  *See* Exhibit D at 5.

- *United States v. Ganim*, 510 F.3d 134, 137 (2d Cir. 2007): the Second Circuit affirmed the district court's 108-month sentence (at the high end of the guidelines) for several corruption-related offenses by the former mayor of Bridgeport, Connecticut.[10]

- *United States v. Kemp*, 500 F.3d 257, 278 (3d Cir. 2007): the district court sentenced the former treasurer of Philadelphia to 120 months – two years longer than the government requested[11] – for corruption-related offenses stemming from his steering of city contracts to political allies.

VI.   Sentencing Recommendation

As President Theodore Roosevelt remarked in a December 7, 1903 address to Congress:

> There can be no crime more serious than bribery. Other offenses violate one law while corruption strikes at the foundation of all law. Under our form of Government all authority is vested in the people and by them delegated to those who represent them in official capacity. There can be no offense heavier than that of him in whom such a sacred trust has been reposed, who sells it for his own gain and enrichment; and no less heavy is the offense of the bribe giver. He is worse than the thief, for the thief robs the individual, while the corrupt official plunders an entire city or State.[12]

Correia now stands convicted before this Court as <u>both</u> a corrupt official and a thief. Thus, to be sufficient under 18 U.S.C. § 3553, his sentence must be substantial.

Unlike many defendants, Correia had the benefit of a good family; he was raised by both his parents and had a "normal and loving upbringing." *See* PSR at ¶ 162. He had the benefit of a good education, receiving a bachelor's degree from Providence College, and completing classes at Harvard's Kennedy School. *See* PSR at ¶ 176. He also had the benefit of a good-paying job,

---

[10] https://www.nytimes.com/2003/07/02/nyregion/federal-judge-sentences-former-mayor-of-bridgeport-to-9-years-in-corruption-case.html

[11] https://www.chicagotribune.com/news/ct-xpm-2005-07-20-0507200215-story.html

[12] https://millercenter.org/the-presidency/presidential-speeches/december-7-1903-third-annual-message

making an annual salary of $118,000 (while only in his 20's) at the time he committed the corruption offenses. *See* PSR at ¶ 179. As such, there is no justification or explanation – other than greed and hubris – for what he did.

As noted by both Dr. Cabeceiras and Stephen Miller, Correia is remorseless and without empathy for his victims. Shockingly, as his post-trial statements make clear, he still views himself as a victim. Accordingly, the need for individual deterrence in this case (18 U.S.C. § 3553(a)(2)(B)), as was true in the *Turner* case,[13] is greater than most.

In addition to the other adverse consequences, Correia's crimes have no doubt fueled increased cynicism at a time the country can ill afford it. His betrayal of his oath and his constituents have further eroded trust in government and deeply hurt the reputation of the city he claims to love. As such, this case also calls out for substantial general deterrence. Every public official should recognize that the consequence for engaging in widespread bribery, corruption, and fraud is a lengthy period of imprisonment. Moreover, the high-profile nature of this prosecution, and the crude nature of the defendant's corruption, make this case a particularly appropriate vehicle for such a message, one that should resonate with public officials statewide.

Mindful of what this Court has said about the guidelines in cases of complexity, the government is not recommending a guidelines sentence. However, as has been noted herein, sentences within (or even above) the guidelines for elected officials are often deemed appropriate by federal courts.

In any event, in fashioning its recommendation here, the government has taken into account all of the 3553 factors, including the crudeness of defendant's corruption, the depths of his

---

[13] *See United States v. Turner*, ECF Dkt. No. 406 at 64.

betrayals, the damage to his victims, his continued defiance, and the need for individual and general deterrence. Having done that, the minimum sentence that the government believes is sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553 is:

- 132 months' incarceration;
- 24 months' supervised release;
- $298,190 in restitution to certain SnoOwl investors;
- $20,473 in restitution to the IRS;
- $566,740 in forfeiture; and
- a mandatory special assessment of $2,100.

Accordingly, the government respectfully requests the Court impose the sentence proposed herein.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Zachary R. Hafer*
ZACHARY R. HAFER
DAVID G. TOBIN
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

*/s/ Zachary R. Hafer*
Zachary R. Hafer
Assistant U.S. Attorney

Date:   September 10, 2021