UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| JASIEL F. CORREIA, II, | )   Criminal No. 18-10364-DPW |
| | ) |
| | )   (First Circuit No. 21-1823) |
| Defendant. | ) |

MEMORANDUM
CONCERNING
ORDER
REGARDING
<u>BAIL PENDING APPEAL</u>
April 4, 2022

The long-delayed filing last week of the defendant's opening appellate brief in the United States Court of Appeals for the First Circuit challenging his remaining convictions in this criminal case represented the final data point for my review before turning this case over for consideration in its entirety to the Court of Appeals. That filing brought to conclusion the potential that I would be provided any further reasonably foreseeable additional information[1] or be

---

[1] Among the additional sources of information - apart from that attending the post-trial motion/sentencing hearings on September 20, 2021 and September 21, 2021 - developed since the jury returned its verdict on May 14, 2021, have been consideration of the sentencing of Mr. Correia's accomplice Antonio Costa on June 28, 2021, consideration of the sentencing of his accomplice Hildegar Camara on July 21, 2021 and the successive plea tenders and trial preparation for a separate trial of the codefendant Genoveva Andrade culminating in Ms. Andrade's sentencing on March 7, 2022.

constrained by unique countervailing circumstances[2] which had to this point caused me to defer the defendant's surrender date for the commencement of his six-year incarceration under the judgment I have entered.

Upon review of Mr. Correia's opening appellate brief, and after intensive and repeated reconsideration of the record of this case and in particular the transcripts and exhibits at his trial in connection with the parallel proceedings which followed Mr. Correia's trial, *see* Note 1 above, I have now come to a position to rule without hesitation that the defendant should not be afforded continued enlargement on bail pending the final resolution of his appeal. He is, however, entitled to review of that bail determination by the First Circuit. *See generally* Federal Rule of Appellate Procedure 9(b). Accordingly, in an

---

[2] Briefly stated, this case has been litigated through a succession of amended indictments during a time of pandemic that made trial arrangements challenging.

The various choices of the codefendant Andrade regarding how she would respond to the charges required severance decisions that were overtaken by plea tenders, the first of which was rejected on June 10, 2021, and she proceeded along a trial track with substantial attendant publicity that could compromise a fair trial if exacerbated by developments in Mr. Correia's post trial litigation. On December 9, 2021, after four days of jury selection involving intensive individual voir dire, her trial had to be aborted and rescheduled for March 2022. In early March she reported she would again tender a plea and she was as noted, *see* Note 1 above, sentenced on March 16, 2022. Thus, those circumstances are no longer relevant to deferring a surrender date.

Meanwhile the Bureau of Prisons faced a crisis in Covid outbreaks that significantly compromised the capacity of the prison authorities to provide safe transport and custody for those whose cases were pending appeal. The impact on the Bureau of Prisons from the pandemic crisis has now receded and thus those circumstances are no longer relevant to the question whether to defer a surrender date.

order issued earlier today, [Dkt No 422], I allowed a reasonable period to permit Mr. Correia now to seek bail relief from the First Circuit itself. Under this extension he must make his application to the First Circuit in a timely fashion, failing which his incarceration shall commence with his self-surrender at the facility designated by the United States Bureau of Prisons no later than noon, April 22, 2022, absent further order by the First Circuit.

- I -

Dissatisfied with a May 14, 2021, jury verdict convicting him of most — but not every one — of the counts presented in an indictment charging him with fraud and political corruption, the defendant engaged new Post Trial Counsel to represent him at sentencing and to advance his appeal. They filed notices of appearances on June 10, 2021.

Anticipating that the defendant by doing so was also positioning the proceedings to facilitate a tactic of laying blame on his Trial Counsel for his dissatisfaction with the verdict, while at the same time maneuvering Trial Counsel out of continued involvement that would result from maintaining an appearance in the case, I declined to permit Trial Counsel's June 11, 2021, motion to withdraw at that stage. It was apparent that Trial Counsel's absence might lead to unwarranted delay in the conclusion of proceedings in this court on the basis of a claimed lack of continuity in Mr. Correia's representation. Consequently, by deferring action on his withdrawal motion, I conditioned Trial Counsel's withdrawal upon his continued maintenance of an appearance,

under Mr. Correia's direction, as among the counsel available to address post-trial motion and sentencing matters. Meanwhile, all transcripts necessary to bring Post Trial Counsel up to speed were assembled. A renewed motion for judgment of acquittal or, alternatively, for a new trial was filed on behalf of Mr. Correia on July 26, 2021.

Given the manipulative qualities the evidence in the case demonstrated to be Mr. Correia's standard method of conducting his affairs, it came as no surprise that his new Post Trial Counsel then included in the defendant's July 27, 2021, Memorandum in support of his motion for judgment of acquittal or, alternatively a new trial, [Dkt. No. 281 at 50 n.10], an attack on Trial Counsel's effectiveness, foreshadowing the suggestion that Trial Counsel's purported ineffectiveness would be grounds for seeking reversal of his convictions. Of course, ineffectiveness claims of the type the defendant then sought to suggest require an evidentiary basis as to which Trial Counsel would perforce be a percipient witness. Yet when I questioned Post Trial Counsel at the post-trial motion/sentencing hearing whether they would be offering such evidence before direct appeal, Post Trial counsel professed no desire to develop the contention. This was despite the fact that Trial Counsel's continued retention under my order denying immediate withdrawal would permit Mr. Correia to direct Trial Counsel at that time to submit an affidavit with respect to the ineffectiveness suggestion.

During the two days of post-trial motion/sentencing hearings on

September 20, 2021, and September 21, 2021, I fully canvassed all the claims and argument the defendant actually presented at that stage. I ultimately concluded that a judgment of acquittal was appropriate for fraud claims arising from the defendant's initial business activity beginning before his election to public office and for the tax fraud activity through which he reported his initial business activity. I declined to grant a judgment of acquittal as to the political corruption charges arising from the defendant's subsequent activity in public service as Mayor of the City of Fall River and imposed concurrent terms of 72 months imprisonment for his conviction on the remaining charges.

After consultation and agreement by the defendant's Post Trial Counsel and government counsel, at the conclusion of the hearing on September 21, 2021, I established what all then agreed was a reasonable schedule for the briefing of a motion for stay pending appeal. Since that time, however, Mr. Correia, enabled by the assent, presumably as a matter of professional courtesy, of government appellate counsel — and without notice to this court —moved repeatedly in the First Circuit for additional periods totaling some three and one-half months within which to submit his opening appellate brief. Relying in part on the First Circuit's allowance of extended briefing, I afforded, over the objections of government trial counsel, parallel extensions of the defendant's surrender date. In the interim, various related events, which I believed could meaningfully inform my answer to the question whether to allow a stay pending appeal, unfolded. *See* Note 1 & 2 above. The question of

5

continued release pending appeal has since become ripe for definitive resolution in this court.

This Memorandum sets forth in some detail the reasons for my order earlier today denying bail pending appeal and establishing a surrender date of noon on April 22, 2022, for Mr. Correia in the absence of further order of the First Circuit.

- II -

The basis for bail pending appeal in the federal courts is set forth in 18 U.S.C. § 3143(b), which requires specific findings by the court to which a bail application is presented. This is because Congress has directed that "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal" must be detained unless the judicial officer finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . .; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
>
> > (i) reversal,
> >
> > (ii) an order for a new trial,
> >
> > (iii) a sentence that does not include a term of imprisonment, or
> >
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 1343(b)(1).

On its face then, § 3143 appears to require three basic findings regarding Mr. Correia's motion.

First, to a clear and convincing standard, that Mr. Correia has demonstrated he does not pose a flight risk or a danger to the community or any person therein;

Second, that Mr. Correia has demonstrated the appeal is not for the purpose of delay;

Third, that Mr. Correia has demonstrated his appeal raises, to a likelihood standard, a substantial question[3] of law or fact that may lead to a result that would mean a period of incarceration during the pendency of his appeal would not be justified on the present record.

The first two findings I now set forth here do not provide a basis for denying Mr. Correia bail pending appeal in this case.

As to the first finding, I continue to be of the view evidenced by my delay of the defendant's surrender date following his notice of appeal that Mr. Correia's actual conduct since his indictment to the present day has demonstrated clearly and convincingly that he is not a flight risk or a current

---

[3] I note that "substantial question of law or fact" is a term of art. It has long been the law in the First Circuit that this requires an issue that must present "a close question or one that very well could be decided the other way," *United States* v. *Bayko*, 774 F.2d 516, 523 (1st Cir. 1985) (quoting *United States* v. *Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)), and that it is not sufficient that the question is "fairly debatable" or suggests "a possibility of reversal," *id.* See also *United States* v. *Zimny*, 857 F.3d 97, 100 (1st Cir. 2017).

danger to the community. While publicly defiant about the validity of his indictment and convictions, he has always appeared in court when required to do so and the Probation Office reports he has maintained compliance with his conditions of release.

As to the second finding, I observe that formally making it is, as a matter of substance, effectively meaningless. It should go without saying that any appeal has as at least one of its objectives delay in execution of the punishment. Courts considering bail pending appeal applications have largely ignored this element of § 1343 before moving on to the core concern of § 1343 once lack of dangerousness has been shown – whether any issue is presented substantial enough that its resolution in an appellate decision would likely result in a period of incarceration, pending resolution of the merits of the appeal, that would not be justified on the current record. Nevertheless, addressing the purpose of delay in particular cases, such as this, may be useful as a means for evaluating the substantiality of the questions presented on appeal.

The merits of Mr. Correia's bail pending appeal motion thus ultimately turn on the substantiality of the issues he presents on appeal and whether any one or more of them will be determined favorably to him. In this Memorandum, I will address the issues Mr. Correia is now pressing before the First Circuit. In doing so, I address not only the issues he actually presented to me through his motion for bail pending appeal in this court. I also, in the

interest of ensuring that I have considered anything else that has belatedly have occurred to Mr. Correia as bearing upon appeal issues, address the new issues presented in his opening appellate brief. In proceeding in this fashion, I am, of course, sensitive to the fact that this Memorandum should not be fashioned as an amicus brief in support of decisions at the trial level. Rather it is offered to illustrate in summary fashion the consideration I have given to the substantiality *vel non* of the merits issues on the basis of which Mr. Correia now apparently seeks further to pursue bail pending appeal.

- III -

Mr. Correia contends that evidence introduced in support of the counts of conviction as to which I granted judgments of acquittal prejudiced him with respect to the convictions that I left standing. This contention is without merit. I have, in connection with both the post-trial motion for acquittal or for a new trial and indeed since entering the judgment being appealed from, conducted multiple, detailed and full reviews of the trial transcripts and other evidence of record to determine, among other things, whether any evidence irrelevant to the counts of conviction was presented to the jury. I have found that none was.

In order to provide a full basis to evaluate the requisite scienter for the counts of conviction that remain, evidence of Mr. Correia's developing awareness of his duties - as he emerged from his days as a college student entrepreneur and became a young public office holder - was material. That his

earlier misconduct was found by me not to meet the demanding standards imposed both by federalism concerns regarding wire fraud and more generally by applications of holdings reflecting increased attentiveness by the courts to the sufficiency of proof of scienter for wire fraud and criminal tax violations does not make such evidence inadmissible as to the remaining counts.  To the contrary, I am satisfied upon my review of the record that the jury was not exposed to anything that would have been inadmissible if only the counts of conviction had been presented.  There was no spillover.  To the degree that the evidence was prejudicial to Mr. Correia – which after all is the otherwise conventional and unobjectionable purpose of evidence submitted by the government in a criminal prosecution - it was not unfairly so.

- IV -

The short and sufficient answer to the issue of purported misjoinder is that Mr. Correia, with more than adequate time to consider the pros and cons of a joint trial on all the charges against him in a single proceeding, chose a joint trial.  Nothing in the record indicates that what I observed throughout these proceedings to be an engaged and informed client not unwilling to give specific directions to professionals working for him was somehow acting unknowingly in making this strategic choice when proceeding to trial.  Neither does the current record support a claim that Mr. Correia was advised inadequately as to joinder.

Of course, despite the insinuation of ineffective assistance by Trial

Counsel made in Mr. Correia's Memorandum regarding his post-trial motion, Mr. Correia's Post Trial Counsel expressly declined to offer evidence of ineffectiveness before the direct appeal is concluded. They did so despite the fact that I had delayed Trial Counsel's withdrawal in significant measure to assure his availability to inform post-judgment proceedings with his experience in both pre-trial and trial proceedings on behalf of Mr. Correia. The misjoinder issue cannot be said to be substantial on this record; as that record now stands, it reflects an informed choice Mr. Correia made as to the best way to confront the various charges brought against him.

- V -

Mr. Correia argues that the evidence as to the counts of conviction present a "close question." Having sat through the trial and received additional information bearing on sentencing, *see* Note 1 above, I am of the view that even if only one of his Hobbs Act political corruption convictions were to remain in place after appellate proceedings, given all the relevant evidence regarding Mr. Correia's culpability, I would leave undisturbed the concurrent sentence I imposed. Thus, the result would be the same and not require any new proceedings of the type contemplated as a basis for bail relief by § 1343. The meritless spillover" claim, *see* Section III above, does not make the issue of sufficiency any more compelling, let alone substantial.

- VI -

Upon review of Mr. Correia's opening appellate brief, it is apparent that

11

fully half of the substantive argument raises issues never presented to me for consideration in connection with Mr. Correia's motion for bail pending appeal. There is no justification for withholding those issues until this point. The new issues were all apparent in the record Post Trial Counsel had before them when the motion for bail pending appeal was presented to me. Moreover, the orderly process of briefing that motion after settling on a reasonable schedule, approved and accepted by counsel, provided Mr. Correia and his Post Trial Counsel a full opportunity to explore those issues before pressing them for the first time in the opening appellate brief.

Nevertheless, I address the new issues here in the context of the efforts of Mr. Correia to remain enlarged pending appeal. Procedurally, I do so out of concern that the First Circuit be apprised as to whether I would, as a result of the newly presented issues, be prepared to issue an indicative order, *cf.* Fed. R. Crim P. 37, suggesting that I would allow a motion for bail pending appeal, a new trial or perhaps a further judgment of acquittal on one or more of the remaining counts on the basis of the newly developed issues. I find upon review that I would not do so; I do not find them to be substantial issues upon which to ground § 1343 relief.

- VII -

Completely ignoring the extensive instructions given throughout the trial proceedings - beginning with the instructions to the members of the venire before the jury was selected and the specifically tailored final instructions

12

regarding presumption of innocence, proof beyond a reasonable doubt, and credibility - Mr. Correia complains that "only a written fragment of [the District Court's] oral charge, an excerpt that included instructions on the charged offenses but omitted instructions on other matters, including the presumption of innocence, proof beyond a reasonable doubt, and witness credibility [was given the jury]." [D.B. at 62]. The claim from which this argument is drawn depends upon a strained reading of case law to suggest that the only written instructions that may be provided to a jury are those that precisely replicate every aspect of the oral instructions. Such a reading is at odds with the overall approach to trial court interactions with juries to ensure that, while jurors are to be fully informed about all pertinent instructions, various written devices — such as those deployed in this case — ranging from redacting the indictment submitted to the jury and providing a detailed verdict slip, to providing written substantive instructions in answer to specific questions, remain available without repeating at the same time each and every jury instruction given to them orally or in writing.

- VIII -

The substance of the instructions actually delivered, to which Trial Counsel who was present to hear them did not object, is not fully reported in the opening appellate brief. The jury received appropriate guidance on the separate consideration of each count as to which I have indicated above all evidence bearing on Mr. Correia's scienter was admissible. The *quid pro quo*

instruction was given forcefully with respect to extortion under color or official right, and the conspiracy instruction did not turn on mere acquiescence but required the jury to find an actual agreement with the victim and/or others.

- IX -

In his opening appellate brief, Mr. Correia argues that the government's use in closing argument of a videotape clip of his statements in a mayoral debate was sufficiently improper to justify a new trial. I did not then view the argument, graphically presented and underscored through the video clip, to be improper in whole or in part. Rather it was fair argument addressing the willingness of Mr. Correia to fashion misleading narratives to advance his personal interests. That argument goes to the core relevant issue in this case, that of scienter. It was not inordinate in the government's closing argument. Understandably, it drew no objection.

- X -

CONCLUSION AND ORDER

There being nothing remaining to delay definitive resolution in this court of Mr. Correia's application for bail pending appeal, I entered the order dispositing of the bail application in this court earlier today. But the bail pending appeal process[4] anticipates that such applications may be presented

---

[4] I recognize that the orderly process of considering a request for bail pending appeal can be particularly frustrating to lay members of the public, especially those entitled to restitution as victims of the defendant's relevant fraudulent conduct. That frustration can, perhaps understandably, erupt into overwrought characterizations of extensions to give full consideration to the arguments presented as "obscenely lenient and a travesty of justice" and to the contention

to successive levels of the federal judiciary.  Given the orderly process followed here, the parties were given guidance in the order issued earlier today to assure they would be able promptly to present the matter to the First Circuit.  While I do not presume to set briefing schedules for the Court of Appeals, I have indicated my view that a fully supported application for § 1343 relief from the Court of Appeals could without strain or difficulty be filed by close of business Monday,  April 11, 2022.[5]  That, in turn, would afford adequate time for

---

that "[e]very extension granted [by me here was] a slap in the face to all the investigators, witnesses, jurors, victims, Fall River Residents, and Federal Prosecutors" [Dkt No. 411].  With all due respect to those views and the frustration which gives rise to them, I must maintain the position that this defendant, as with any defendant, is entitled to the full scope of the due process rights federal law provides and a reasonable time in which to exercise those rights.

[5] In this connection, experience to date prompts me to offer the view that, in light of the demonstrated pattern and practice of the defendant to wait until the very last minute before seeking requests for relief that could be presented on an orderly - and not a rushed - schedule suggests that some specific scheduling order may be necessary by the First Circuit to ensure the opportunity for deliberate consideration of any application for bail pending appeal submitted to that court following my denial of such relief.  This is particularly so when the professional courtesy of government appellate counsel in assenting to extensions will likely result in Mr. Correia assenting to extensions of appellate briefing by the government with attendant delay in ultimate resolution of his appeal on the merits.

briefing in opposition and deliberate consideration in the First Circuit before the new self-surrender date I have ordered to occur no later than noon on April 22, 2022.

*Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE