UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JASIEL F. CORREIA, II, and<br>GENOVEVA ANDRADE | Criminal Case No. 18-CR-10364-DPW |

THE COMMONWEALTH OF MASSACHUSETTS
CANNABIS CONTROL COMMISSION'S PARTIALLY ASSENTED-TO PARTIAL
MOTION TO LIFT, OR IN THE ALTERNATIVE,
MODIFY THE SECOND AMENDED PROTECTIVE ORDER

The Commonwealth of Massachusetts Cannabis Control Commission (Commission) respectfully requests that the Second Amended Protective Order, entered on June 26, 2020 and docketed as Docket No. 124 (Protective Order), be lifted, in part, as it pertains to protected information concerning Greener Leaf, Inc. (Greener Leaf), and certain interview reports (collectively, the Interview Reports) or in the alternative, that the Protective Order be modified. Assistant United States Attorney Dustin Chao assented to the Commonwealth's partial request to lift. Counsel for Defendant Genoveva Andrade, Attorney Charles W. Rankin, does not object to the request. Counsel for defendant Jasiel F. Correia, Attorney Daniel N. Marx, takes no position.

As set forth below and in the Affidavit of Yaw Gyebi, Jr., the Commission's Chief of Investigations and Enforcement, dated November 18, 2022, (Chief Gyebi and the Gyebi Affidavit), the Commission is charged with reviewing applications for registration and licensure of individuals and entities seeking to operate in the Commonwealth of Massachusetts (Commonwealth) as adult-use Marijuana Establishments (MEs), Medical Marijuana Treatment Centers (MTCs), and Independent Testing Laboratories (ITLs). Gyebi Aff. at ¶ 2. In the

performance of its legitimate statutory mandates and regulatory duties, the Commission has resolved all but one matter, the applications of Greener Leaf, Inc. (Greener Leaf) to obtain a final license to operate an adult-use ME, specifically, a Marijuana Retailer,[1] and to change the individuals who have ownership and control interests (Applications). Id. at ¶ 6. Chief Gyebi attests that the investigation into Greener Leaf, and the individuals associated with the Applications, cannot be resolved while the Protective Order remains in place or without further direction from the Court. Id. at ¶¶ 9, 14-22. To the extent that further action is taken on the license, the Commission should have the option of pursuing investigative and administrative matters in the public view. At the conclusion of the investigation, there will be consideration and a potential vote by the full Commission at a public meeting. If the full Commission rejects the application to change ownership, it is also possible that the Commission will take further enforcement action against Greener Leaf, which may result in an administrative hearing before the Commission's independent Hearing Officer; consideration and a vote by the full Commission; and judicial proceedings before the state and federal courts. Id. at ¶ 18. For these reasons and those stated below, the Commission moves that the Protective Order be lifted, in part, or, in the alternative, to be modified (Partial Motion to Lift), so that Chief Gyebi and Enforcement staff can use the Interview Reports to conduct and complete the Commission's investigation, and, as needed, perform its legitimate statutory mandates and regulatory duties.

LEGAL STANDARDS GOVERNING PROTECTIVE ORDERS

The Court has wide discretion in defining the scope of a protective order. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). There is no definitive standard for lifting, or in the

---

[1] https://masscannabiscontrol.com/document/provisional-license-executive-summary-greener-leaf-inc-mrn281790/; and https://masscannabiscontrol.com/document/renewal-application-greener-leaf-inc-mr281790-retail/.

alternative, modifying, a protective order in a criminal case.  United States v. Bulger, 283 F.R.D. 46, 52-53 (D. Mass. 2012).

In the circumstances of this case, the Protective Order authorizes "an expanded exception to the customary protective order," which governs the dissemination of discovery materials to the parties in this matter.[2]  It permits the federal government to disclose to the Commission certain protected materials to enable it to fulfill its legitimate statutory mandates and perform its legitimate regulatory duties,[3] which include "disclosing relevant protected information to the extent necessary in connection with its investigative and administrative proceedings, as well as in connection with related state court proceedings."[4]  The order further obligates the Commission to seek permission before disclosing protected information if  "any additional explicit disclosure of protected information is necessary" in the performance of its duties.[5]  In its Memorandum Regarding Protective Order, dated March 25, 2022 and docketed as Document No. 416, the Court (Woodlock, J.), issued a decision denying the federal government's motion to lift the Protective Order stating that "if the Commission in the future seeks some specific identifiable modification of the . . . Order, it must . . . file a motion for amendment setting forth with particularity its grounds for contending such a modification is necessary."[6]

## THE COMMISSION'S STATUTORY & REGULATORY BACKGROUND

The Commission is the state agency responsible for administering the laws related to medical- and adult-use marijuana in the Commonwealth that allow individuals and entities to be

---

[2] Memorandum Regarding Protective Order, entered March 25, 2022 [Docket No. 416], at 1.
[3] Id.
[4] Second Amended Protective Order, issued on June 26, 2020 and docketed as Document No. 124 at 2.
[5] Id.
[6] Memorandum Regarding Protective Order, dated March 25, 2022 and docketed as Document No. 416 at ¶ 2.

3

licensed to operate medical-use MTCs and adult-use MEs.[7] The Legislature established the Commission to support the creation of a regulated and taxed industry in which licensed businesses and registered agents could conduct legal sales in a manner that protects the public health, safety, and welfare.[8] In so doing, it recognized that because the sale of marijuana historically has been conducted through the illegal market, the Commission needs broad authority to interpret and implement its statutory scheme.[9]

    A.    <u>The Commission's Broad Authority over Licensing</u>

The Legislature has delegated broad authority to the Commission over the licensing of applicants. Under M. G. L. c. 94G, § 4, the Commission "shall have all the powers necessary or convenient to carry out and effectuate its purposes including, but not limited to, the power to: . . . (x) determine which applicants shall be awarded licenses."[10] Section 4 gives the Commission broad investigative powers in support of its licensure powers, authorizing it to "conduct investigations into the qualifications of . . . all applicants for licensure"[11] and "gather facts and information applicable to the commission's obligation to issue, suspend or revoke licenses,

---

[7] M. G. L. c. 94I (medical-use) and c. 94G, § 4 (adult-use).
[8] St. 2016, c. 334, § 3.
[9] St. 2016, c. 334 makes clear its intent that the Commission have broad discretion in interpreting the statutory scheme, providing in pertinent part as follows:
> "The purpose of this Act is to control the production and distribution of marijuana under a system that licenses, regulates and taxes the businesses involved in a manner similar to alcohol and to make marijuana legal for adults 21 years of age or older. Its intent is to remove the production and distribution of marijuana from the illicit market and to prevent the sale of marijuana to persons under 21 years of age by providing for a regulated and taxed distribution system. *To the fullest extent possible, its terms are to be interpreted in accordance with the purpose and intent set forth in this section.*"

St. 2016, c. 334, § 1 (emphasis added).
[10] M. G. L. c. 94G, § 4 (a) (x).
[11] M. G. L. c. 94G, § 4 (a) (xv).

registrations, finding of suitability or approval of licensure."[12] To fulfill its statutory mandates, it is necessary for the Commission to preserve the integrity of its investigatory process, including to protect its techniques and sources.[13]

The Commission's statutes also give it broad power to determine the process for the licensing of applicants, granting the Commission the power to adopt regulations governing "(i) methods and forms of application which an applicant for a license shall follow and complete before consideration by the commission[.]"[14] Relying on this authority, the Commission has identified records created as part of the application and investigatory process to be confidential. Under its regulations, "Confidential Records"[15] includes "Confidential Application Materials"[16]

---

[12] Id. at § 4 (a) (xiv).
[13] Association For Reduction of Violence v. Hall, 734 F.2d 63, 66 (1st Cir. 1984).
[14] M. G. L. c. 94G, § 4 (a½) (i).
[15] "Confidential Records" are defined as "any electronic or written record required to be kept confidential or protected from disclosure by law, which includes, but is not limited to, Confidential Application Materials, Confidential Social Equity Application Materials, Confidential Investigatory Materials, and Protected Patient Records (as defined in 935 CMR 501.002: Protected Patient Records)." 935 Code Mass Regs. §§ 500.002 and 501.002.
[16] "Confidential Application Materials" are defined as:
> "any electronic or written document, communication or other record pertaining to an application for licensure or registration that is required to be confidential or protected from disclosure by law which includes, but is not limited to, personally identifiable information concerning an applicant, Registrant, or Licensee; background check information or Criminal Offender Record Information (CORI) as defined by 803 CMR 2.02: Definitions, or Criminal History Record Information (CHRI) as defined by 803 CMR 7.02: Definitions; and information that implicates security concerns."

935 Code Mass Regs. §§ 500.002 and 501.002.

and "Confidential Investigatory Materials."[17]  The Commission will not disclose these records except in limited circumstances.[18]

        B.      <u>The Application Process</u>

Pursuant to its statutory and regulatory authority, the Commission has established a multi-phase application process through which an applicant must demonstrate its qualifications for licensure to obtain a provisional and final license and receive authorization to commence operations.[19]  The process begins with the submission of an application for licensure, which includes an application of intent, background check information, management and operations profile, and fees.[20]  Before an application can be considered complete, the applicant must submit, among other things, background check information about all Persons or Entities Having Direct or Indirect Control (as defined in 935 Code Mass. Regs. §§ 500.002 and 501.002), including "information detailing involvement in" any of a variety criminal, civil or administrative matters,

---

[17] "Confidential Investigatory Materials" are defined as "any electronic or written document, communication or other record pertaining to an investigation, which concerns:
> "(a)  A possible violation of a statute, regulation, rule, practice or procedure, or professional or industry standard, administered or enforced by the Commission;
> "(b)  An ongoing investigation that could alert subjects to the activities of an investigation;
> "(c)  Any details in witness statements, which if released create a grave risk of directly or indirectly identifying a private citizen who volunteers as a witness;
> "(d) Investigative techniques the disclosure of which would prejudice the Commission's future investigative efforts or pose a risk to the public health, safety or welfare; or
> "(e)  The background of any person the disclosure of which would constitute an unwarranted invasion of personal privacy."

935 Code Mass Regs. §§ 500.002 and 501.002.
[18] Under 935 Code Mass Regs. §§ 500.820 (1) and 501.820 (1), "[a]ll records made or received by the Commission shall be public records and shall be available for disclosure on request pursuant to this section and 950 CMR 32.00: Public Records Access, except the following, which shall be exempt from disclosure to the extent permitted by law . . . . (f) All Confidential Records as defined in [the regulations]."
[19] 935 Code Mass. Regs. § 500.000 <u>et seq.</u> and 501.000 <u>et seq.</u>
[20] <u>Id</u>. at §§ 500.101 (1) and 501.101(1).

id. § 500.101 (1) (b) (3) (a), and "any other information required by the Commission," id. § 500.101 (1) (b) (3) (g).  See 935 Code Mass. Regs. § 501.101 (same)

        C.        The Commission's Statutory Responsibility to Determine Suitability & Other Qualifications for Licensure

The Commission cannot issue a provisional license—or ultimately a final license—without a determination that the applicant has demonstrated the required qualifications for licensure.[21]  Among the qualifications, an applicant must demonstrate suitability for licensure.[22]

The Commission has established suitability standards in its regulations for entity applicants seeking licensure and for individual Owners seeking registration, 935 Code Mass. Regs. §§ 500.801, Table A (setting forth precipitating issues, time periods, and results) and 501.801, Table A (same), with reference to issues such as open or unresolved criminal proceedings; outstanding or unresolved criminal warrants; submission of untruthful information to the Commission; marijuana license or registration violations, including open or unresolved matters; open professional or occupational license cases; sex offender registration; and certain criminal convictions.[23]  The suitability tables also includes a catch-all category for any matter where "[t]he applicant's or Licensee's prior actions posed or would likely pose a risk to the

---

[21] M. G. L. c. 94G, § 5 (b) (1).
[22] Suitability is a consistent theme throughout M. G. L. c. 94G.  For example, the Commission is authorized to "gather facts and information applicable to" a "finding of suitability[.]" M. G. L. c. 94G, § 4 (xiv).  As part of the provisional licensure review, the Commission requires that certain individuals submit to a background check "to assist the [C]ommission in determining the applicant's suitability for . . . licensure, registration or approval." M. G. L. c. 94G, § 21 (c).  Once licensed, the ME or MTC must maintain its suitability. M. G. L. c. 94G, § 4 (a) (xiv); see also 935 Code Mass. Regs. § 500.801(3)(recognizing that licensees "shall remain suitable at all times a License . . . remains in effect"); see id. at § 501.801(3) (same).  The failure to remain suitable can result in a denial of a license application or a suspension or revocation of an existing license. M. G. L. c. 94G, § 4 (a) (xiv).  See 935 Code Mass. Regs. §§ 500.400 (4), 500.450 (3), and 500.801 (3) and 501.400 (4), 501.450 (3), and 501.801 (3).
[23] 935 Code Mass. Regs. §§ 500.801, Table A, and 501.801, Table A

public health, safety, or welfare; and the risk posed by the applicant's or Licensee's actions relates or would likely relate to the operation of a [ME or MTC]."[24]

The Commission makes the final decision as to the applicant's suitability as well as its other qualifications for licensure.[25] Upon review of a complete application, the Commission can grant or deny a Provisional License.[26] If it grants a Provisional License, the application then undergoes further review, including inspections, following which the Commission may issue a Final License.[27] After compliance with the Commission's regulations and license conditions has been confirmed, the Commission must give the licensee permission to commence operations.[28]

Once licensed, a licensee can also apply to the Commission to change the individuals or entities who have ownership or control interests.[29] As with the application for licensure, the prospective owner must demonstrate suitability and other qualifications for licensure.[30]

C.   The Commission's Statutory Authority to Suspend or Revoke a License

In addition to its authority to determine an applicant's suitability and other qualifications for licensure, the Commission can issue an order to show cause why a provisional or final license should not be suspended or revoked.[31] On receipt of such order, the licensee can request a hearing before the Commission's independent hearing officer.[32] On receiving the hearing officer's recommended decision, the Commission can revoke or suspend a license.[33] To

---

[24] Id.
[25] Id. at §§ 500.800 (10) and 501.800 (10).
[26] M. G. L. c. 94G, § 5 (b) (1); 935 Code Mass. Regs. §§ 500.102 (2) (c) (using terms "grant" or "deny") and 501.102 (2) (c).
[27] 935 Code Mass. Regs. §§ 500.103 (2) and 501.103 (2).
[28] M. G. L. c. 94G, § 12 (g).
[29] 935 Code Mass. Regs. §§ 500.104 and 501.104.
[30] Id.
[31] Id. at §§ 500.370 and 501.370.
[32] Id. at §§ 500.500 (4) and 501.500 (4).
[33] Id. at §§ 500.500 (11)-(12) and 501.500 (11-12).

challenge a final decision by the Commission, the licensee can file an administrative appeal under M. G. L. c. 30A, § 14.[34]

## ARGUMENT

The Commission's reasons for seeking partially to lift the order are twofold. First, the Commission needs to conduct its investigation and pursue its administrative options without the restrictions of the Protective Order. Second, the Commission should be able to pursue these matters in the public view.

Under the terms of the Protective Order, the Commission may make public disclosures of the protected information and gather additional information through its investigatory process, but must seek this Court's permission to make additional disclosures of protected information not contemplated by the order.[35] In seeking to lift or modify the order, the Commission files this Partial Motion to Lift and the supporting affidavit of Chief Gyebi, which set forth with particularity its grounds for seeking relief.[36]

As described above, the Commission is statutorily mandated to determine an applicant's suitability and other qualifications for licensure.[37] In addition, the Commission must monitor

---

[34] M. G. L. c. 30A, § 14.
[35] Second Amended Protective Order, issued on June 26, 2020 and docketed as Document No. 124 at 2.
[36] Memorandum Regarding Protective Order, issued on March 25, 2022 and docketed as Document No. 416 at ¶ 2.
[37] M. G. L. c. 94G, § 4 (a) (x) (v) (authorizing the CCC to "conduct investigations into the qualifications of . . . all applicants for licensure"); § 4 (a) (xiv) (authorizing it to "gather facts and information applicable to the commission's obligation to issue, suspend or revoke licenses, registrations, finding of suitability or approval of licensure for: [A] a violation of this chapter or any regulation adopted by the commission; [B] willfully violating an order of the commission directed to a licensee or a person required to be registered; [C] the conviction of a criminal offense; or [D] any other offense which would disqualify such a licensee from holding a license").

compliance with state licensing requirements.[38] The Commission's ability to fulfill its statutory mandates depends on the exercise of its investigatory function. To do so, the Commission is only seeking a partial lifting of the Protective Order as it applies to certain Interview Reports, copies of which were provided by the federal government to the Commission.

Under the current Protective Order, Chief Gyebi attests that he needs to use the Interview Reports and gather new information in order to resolve the pending investigation into Greener Leaf and the individuals associated with its Applications for final licensure and a change in ownership and control. Gyebi Aff. at ¶ 17-20. He may also need to take enforcement action and to represent the Commission's interests in any resulting administrative and judicial proceedings. Id. at ¶ 21. For these reasons, the Commission respectfully requests that the Court weigh the Commission's interest in performing its legitimate statutory and regulatory functions and grant its requested relief.

To the extent that the defendants may argue that harm will result from the Commission's use of the Interview Reports, any risk of harm is mitigated by the fact that the events described in the Interview Reports have generally been disclosed to the public through the presentation of the federal government's case,[39] including through the trial testimony of certain individuals. In addition, the likelihood that the protected information contained in the Interview Reports will be released to the public is speculative. Importantly, the Commission may rely on exemptions to the Public Records Law, M. G. L. c. 66, § 10, to withhold these records, if it receives a public records request, which will enable it to protect its investigatory process, including its use of

---

[38] Id.
[39] The federal government's case was presented as part of the underlying criminal trial of the defendant, Jasiel Correia, II (Correia).

protected information in the Interview Reports. As noted above, Confidential Information[40] includes Confidential Application Materials[41] and Confidential Investigatory Materials.[42] In the past, the Commission has relied on M. G. L. c. 4, § 7 (26) (f), to withhold public records in order to safeguard its pending investigations.[43] Thus, even if this Court were to decide to lift the

---

[40] "Confidential Records" are defined as "any electronic or written record required to be kept confidential or protected from disclosure by law, which includes, but is not limited to, Confidential Application
Materials, Confidential Social Equity Application Materials, Confidential Investigatory Materials, and Protected Patient Records (as defined in 935 CMR 501.002: Protected Patient Records)." 935 Code Mass Regs. §§ 500.002 and 501.002.
[41] "Confidential Application Materials" are defined as:
> "any electronic or written document, communication or other record pertaining to an application for licensure or registration that is required to be confidential or protected from disclosure by law which includes, but is not limited to, personally identifiable information concerning an applicant, Registrant, or Licensee; background check information or Criminal Offender Record Information (CORI) as defined by 803 CMR 2.02: Definitions, or Criminal History Record Information (CHRI) as defined by 803 CMR 7.02: Definitions; and information that implicates security concerns."

935 Code Mass Regs. §§ 500.002 and 501.002.
[42] "Confidential Investigatory Materials" are defined as "any electronic or written document, communication
or other record pertaining to an investigation, which concerns:
> "(a) A possible violation of a statute, regulation, rule, practice or procedure, or professional or industry standard, administered or enforced by the Commission;
> "(b) An ongoing investigation that could alert subjects to the activities of an
investigation;
> "(c) Any details in witness statements, which if released create a grave risk of directly or indirectly identifying a private citizen who volunteers as a witness;
> "(d) Investigative techniques the disclosure of which would prejudice the Commission's future investigative efforts or pose a risk to the public health, safety or welfare; or
> "(e) The background of any person the disclosure of which would constitute an unwarranted
invasion of personal privacy."

935 Code Mass Regs. §§ 500.002 and 501.002.
[43] Under the Investigatory Exemption, the Commission has a basis for withholding "investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." M. G. L. c. 4, § 7 (26) (f).

Protective Order, the Interview Reports or new information gathered in the course of its investigation will not necessarily be disclosed to the public.

That said, the Commission asserts that it is in the public interest to allow the Commission to exercise its discretion in weighing the need for public disclosure. The Protective Order limits the Commission's ability to conduct its statutory and regulatory duties in an open and transparent manner. This is inconsistent with the Commission's obligations to deliberate in an open session of a public meeting in accordance with the Open Meeting Law, M. G. L. c. 30A, §§ 18-25. Moreover, the Commission's operating principles include a commitment to conduct all of its processes openly and transparently.[44] Under the current Protective Order, the Commission must enter executive session to discuss Greener Leaf and the individuals and entities involved in these Applications.[45] To fulfill its statutory mandates and perform its regulatory duties, the Commission should be able to weigh whether and to what extent to disclose the Interview Reports and any potential new information. This is in keeping with the Court's observations that there are important public interests at stake, specifically, "the salient competing and countervailing interests involved . . . in securing the public's interest in not further and unnecessarily obstructing authorized proceedings by other regulatory agencies concerned with the activities at issue in this criminal prosecution."[46] For all these reasons, the Commission has significant interests in not being constrained by the Protective Order.

---

[44] About - Cannabis Control Commission Massachusetts (masscannabiscontrol.com).
[45] The Commission has entered executive session to discuss the other individuals and entities implicated in this matter. Relatedly, it continues to withhold the release of executive session minutes because of the limitations of the protective order.
[46] Memorandum Regarding Protective Order, entered March 25, 2022 [Docket No. 416], at 4.

## RELIEF REQUESTED

For the reasons stated above, the Commission respectfully requests that the Protective Order be lifted, in part, as it pertains to certain Interview Reports or, in the alternative, be modified. As to all other Interview Reports, the Protective Order would remain in place. If this Court declines to lift or modify the order, Chief Gyebi respectfully seeks clarification on the permissible scope of disclosure of protected information relative to the pending investigation of, and potential administrative enforcement action against, Greener Leaf, as it relates to the redacted portions of his affidavit. Gyebi Aff. at ¶ 23.

Attached hereto is a Third Amended Protective Order, including an acknowledgment executed by General Counsel Baily, who submits this motion on behalf of the Commission, and by Chief Gyebi.

Respectfully submitted,

CANNABIS CONTROL COMMISSION

By its attorneys,

/s/ *Christine Baily*
MAURA HEALEY
    Attorney General
Christine A. Baily, Esq. (BBO No. 643759)
    Special Assistant Attorney General &
    General Counsel
Cannabis Control Commission
Union Station
2 Washington Square
Worcester, MA 01604
christine.baily@cccmass.com
(774) 415-0377

January 26, 2023

13

CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, General Counsel Christine Baily, on behalf of the Commonwealth of Massachusetts Cannabis Control Commission, hereby certify pursuant to Local Rule 7.1 (a) (2) that Associate General Counsel Alycia J. DeAngelis conferred in good faith with opposing counsel in order to resolve or narrow the issues presented in the foregoing Partial Motion to Lift.

/s/ Christine Baily
Christine Baily

January 26, 2023

CERTIFICATE OF SERVICE

I, General Counsel Christine Baily, on behalf of the Commonwealth of Massachusetts Cannabis Control Commission, hereby certify that this document filed through the Electronic Case Filing System (ECF) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Christine Baily
Christine Baily

January 26, 2023

CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, General Counsel Christine Baily, on behalf of the Commonwealth of Massachusetts Cannabis Control Commission, hereby certify pursuant to Local Rule 7.1 (a) (2) that on November 25, 2022, Associate General Counsel Alycia J. DeAngelis conferred in good faith with opposing counsel in order to resolve or narrow the issues presented in the foregoing Partial Motion to Lift.

CANNABIS CONTROL COMMISSION

/s/ Christine Baily
MAURA HEALEY
    Attorney General
Christine A. Baily, Esq. (BBO No. 643759)
    Special Assistant Attorney General &

                                                  General Counsel  
Cannabis Control Commission  
Union Station  
2 Washington Square  
Worcester, MA 01604  
(774) 415-0377  
Christine.Baily@cccmass.com

January 26, 2023