UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

JASIEL F. CORREIA, II, and

GENOVEVA ANDRADE

Criminal Case No. 18-CR-10364-DPW

AFFIDAVIT OF YAW GYEBI, JR.,
THE COMMONWEALTH OF MASSACHUSETTS CANNABIS CONTROL
COMMISSION'S CHIEF OF INVESTIGATIONS & ENFORCEMENT, IN SUPPORT OF
THE COMMISSION'S PARTIAL MOTION TO LIFT OR, IN THE ALTERNATIVE,
MODIFY THE SECOND AMENDED PROTECTIVE ORDER

I, Yaw Gyebi, Jr., Esq., the Chief of Investigations and Enforcement of the Massachusetts

Cannabis Control Commission (Commission) submit this affidavit in support of the

Commission's Partial Motion to Lift or, in the alternative, Modify the Second Amended

Protective Order (Motion), issued on June 26, 2020 and docketed as Document No. 124

(Protective Order).  This affidavit is based on my personal knowledge of the facts regarding the

Commission's necessary and intended use of information protected under the Protective Order.

The Protective Order permits the Commission to use certain "protected information in the

performance of its legitimate regulatory duties" which includes "disclosing relevant protected

information to the extent necessary in connection with its investigative and administrative

proceedings, as well as in connection with related state court proceedings."[1]  The Protective

Order further obligates the Commission to seek permission before disclosing protected

information if,  in the performance of its duties, "any additional explicit disclosure of protected

information is necessary."[2]  The Commission also made certain assurances to the Court in its

Assented-to Motion to Modify Amended Protective Order, dated June 25, 2020 and docketed as

Document No. 123, regarding the procedures it would follow under an amended order.

Specifically, that "[i]n the performance of its legitimate regulatory duties, the CCC . . . will seek

to limit the scope of disclosure by taking steps that include, but are not limited to, . . .

[c]onsulting with federal prosecutors on the scope of disclosure of protected information needed,

and providing CCC investigatory materials to the extent necessary for prosecutors to comply

with their discovery obligations." [3]

 In its Memorandum Regarding Protective Order, dated March 25, 2022 and docketed as

Document No. 416, the Court (Woodlock, J.), issued a decision denying the federal

government's motion to lift the Protective Order stating that "if additional disclosures not

covered by its directive were thought by the Commission to be necessary, the Commission was

free to seek further direction from this court."  In the spirit of that directive, the Commission,

through its Chief of Investigation and Enforcement, seeks further direction from the Court.  The

Court's decision also required that "[i]f the Commission in the future seeks some specific

identifiable modification of the [Protective] Order, it must . . . file a motion for amendment

---

[1] Second Amended Protective Order, which was issued on June 26, 2020 and docketed as
Document No. 124 at 1-2.
[2] Id.
[3] Assented-to Motion to Modify Amended Protective Order, dated June 25, 2020 and docketed as
Document No. 123, at 3, ¶ 7.a.

setting forth with particularity its grounds for contending such a modification is necessary."[4] Until now, the Commission has been successful in resolving most administrative matters associated with United States v. Correia & another, United States District Court Criminal Docket No. 1:18-cr-10364-DPW-1, while strictly observing the will of the Court.  Now, one matter, relative to Greener Leaf, Inc. (Greener Leaf), remains unresolved.  Due to the unique circumstances of that case, the Commission seeks further relief from the Protective Order specific to Greener Leaf and certain related individuals to conduct a thorough investigation. The Commission does not seek relief from the Protective Order as it relates to other protected information.  This affidavit assists the accompanying Motion by providing specific factual grounds in support.

---

[4] Memorandum Regarding Protective Order, dated March 25, 2022 and docketed as Document No. 416, at 3, ¶ 2.

[5]

I hereby depose and state as follows under pains and penalties of perjury:

1. I am at least 18 years of age.

2. From April 2018 to the present, I have served as the Commission's Chief of Investigations and Enforcement (Chief).  As part of my official duties, I oversee investigations concerning the registration of Marijuana Establishment Agents and the licensure of adult-use Marijuana Establishments (MEs), Medical Marijuana Treatment Centers (MTCs), and Independent Testing Laboratories (ITLs), a process which includes a review of an applicant's suitability for licensure.

3. As the Chief, I supervise the Commission's Investigations and Enforcement staff (Enforcement staff), which reviews applicants' qualifications for licensure, monitors Licensees' compliance with licensure requirements,[6] and makes recommendations as to whether an applicant or Licensee is suitable or should be granted licensure.[7]  Once an applicant is licensed, I also oversee applications for any changes of ownership and control,[8] investigations in connection with those applications, and, additionally, investigations regarding potential violations of the laws of the Commonwealth.  Lastly, I oversee the issuance of enforcement orders which may result in administrative hearings under M. G. L. c. 30A, § 14.

4. On or around January 11, 2019, Greener Leaf—through its sole principal Saliby—applied to operate as an adult-use ME, specifically, a Marijuana Retailer in Fall River, Massachusetts (Application).  After a Commission vote, on or about April 5, 2019, Greener Leaf was issued a Provisional License.  It has not yet obtained a Final License.

5. On or around September 6, 2019, I learned that the federal indictment of the former Mayor of the City of Fall River, Jasiel F. Correia, II (former Mayor Correia), and his Chief of Staff Genoveva Andrade (Andrade) in the matter of United States v. Correia & another, United States District Court Criminal Docket No. 1:18-cr-10364-DPW-1 (Second Superseding Indictment), included allegations of corruption relating to the Commission's licensing process.  As set forth in the Second Superseding Indictment, former Mayor Correia, his Chief of Staff Andrade, and their associates allegedly engaged in a criminal scheme to obtain favors from MTC and ME applicants in exchange for Letters of Non-Opposition or Host Community Agreements, respectively.

---

[6] M. G. L. c. 94G, § 4 (a) (x)-(xi), (xiv)-(xv); 935 Code Mass Regs. §§ 500.800 and 500.801.

[7] M. G. L. c. 94G, § 4 (a) (xiv) (authorizing the Commission to "gather facts and information applicable to the commission's obligation to issue, suspend or revoke licenses, registrations, finding of suitability or approval of licensure for: (A) a violation of this chapter or any regulation adopted by the commission; (B) willfully violating an order of the commission directed to a licensee or a person required to be registered; (C) the conviction of a criminal offense; or (D) any other offense which would disqualify such a licensee from holding a license"); M. G. L. c. 94G, § 4 (a) (xv) (authorizing the Commission to "conduct investigations into the qualifications of . . . all applicants for licensure").

[8] 935 Code Mass Regs. §§ 500.104(1)(b).

6. 

7. As part of its investigation into the suitability of these ten licensees and applicants from Fall River, the Commission's Legal and Enforcement staff worked cooperatively with federal prosecutors to access the interview reports of individuals seeking to operate as MEs or MTCs in Fall River, including the Interview Reports at issue in this Motion.

8. 

9.  For example, Enforcement staff has had to:

    a. Confer with federal prosecutors regarding the content of its interrogatories and interview questions to avoid the potential disclosure and use of protected information, and to avoid generating new evidence;

    b. Decline to take certain investigatory actions, such as interviewing applicants, licensees, or witnesses, submitting requests for production of documents or interrogatories, or providing discovery to opposing parties out of consideration for federal prosecutors to avoid generating new evidence;

    c. Delay or limit investigatory, enforcement or administrative actions to avoid potentially interfering with the criminal trial;

    d. Restrict access of protected information within the Commission to Enforcement Counsel staff to limit the number of recipients of any protected information as part of its investigative efforts;

    e. Use alternative means for record retention so that access to protected information is restricted; and

    f. Present recommendations to Commissioners in closed sessions at public meetings to avoid disclosure of protected information.

10.

11. 

12.

13.

14.

In this case, however, Enforcement staff have been unable to conduct and complete its investigation without taking actions that could risk generating new information and potentially offending the Protective Order.

15. I understand the Protective Order to govern the use and dissemination of the Interview Reports but not restrict gathering new information through other sources. However, the permissible extent of the use, dissemination, and specific disclosure of those Interview Reports in support of investigative efforts and at administrative and judicial proceedings is unclear. In an abundance of caution, I am seeking relief from or, in the alternative, clarification of the Protective Order from this Court.[11]

16. 

---

9

10

[11] Second Amended Protective Order, which was issued on June 26, 2020 and docketed as Document No. 124 at 2; Memorandum Regarding Protective Order, dated March 25, 2022 and docketed as Document No. 416 at ¶ 2.



17. 

18.

19.

20.

21.

22. For these reasons, the Commission cannot effectively conduct and complete the investigation into Greener Leaf ███████████████████████████ under the current version of the Protective Order.  Thus, it is necessary to partially lift or modify the Protective Order as it pertains to the identified Interview Reports so that the Commission can perform its statutory and regulatory functions.

23. If this Court declines to lift or modify the Protective Order, I respectfully seek clarification on the permissible scope of disclosure of protected information relative to the pending investigation of, and potential administrative enforcement action against, Greener Leaf, as it relates to Paragraphs 15 to 21 above.

24. Under the Commission's regulations, certain statements regarding the Commission's investigatory plans are confidential.  Accordingly, the Commission will request that this affidavit be sealed.

**Signed under the pains and penalties of perjury this 18th day of November, 2022.**

*Yaw Gyebi, Jr.*

Yaw Gyebi, Jr., Esq.
*Chief of Investigations and Enforcement*
Cannabis Control Commission

9

<u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1</u>

I, General Counsel Christine Baily, on behalf of the Commonwealth of Massachusetts Cannabis Control Commission, hereby certify pursuant to Local Rule 7.1 (a) (2) that Associate General Counsel Alycia J. DeAngelis conferred in good faith with opposing counsel in order to resolve or narrow the issues presented in the foregoing Partial Motion to Seal.

<i><u>/s/ Christine Baily</u></i><br>Christine Baily

January 26, 2023

<u>CERTIFICATE OF SERVICE</u>

I, General Counsel Christine Baily, on behalf of the Commonwealth of Massachusetts Cannabis Control Commission, hereby certify that this document filed through the Electronic Case Filing System (ECF) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<i><u>/s/ Christine Baily</u></i><br>Christine Baily

January 26, 2023